**No. 25-7657**

# In the United States Court of Appeals for the Ninth Circuit

DZ RESERVE; CAIN MAXWELL,
*Plaintiffs-Appellees,*

v.

META PLATFORMS, INC.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northen District of California
Case No. 3:18-cv-04978 (The Hon. James Donato)

## ANSWERING BRIEF OF PLAINTIFFS-APPELLEES

HANNAH M. KIESCHNICK
GUPTA WESSLER LLP
235 Montgomery Street
Suite 629
San Francisco, CA 94104
(415) 573-0336

GEOFFREY GRABER
ERIC A. KAFKA
KARINA GRACE PUTTIEVA
MADELYN PETERSON
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, NW
Fifth Floor
Washington, DC 20005
(202) 408-4600

MATTHEW W.H. WESSLER
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*matt@guptawessler.com*

CHARLES REICHMANN
LAW OFFICES OF CHARLES
REICHMANN
16 Yale Circle
Kensington, CA 94708
(510) 558-3366

March 27, 2026                    *Counsel for Plaintiffs-Appellees*

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellee DZ Reserve, a Colorado Limited Liability Company in Good Standing, by and through its undersigned counsel, certifies that it does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

**TABLE OF CONTENTS**

Disclosure statement..............................................................................i

Table of authorities ............................................................................iv

Introduction........................................................................................1

Statement of the issues.........................................................................3

Statement of the case...........................................................................4

    1.     Meta litigates this case in federal court for seven years and repeatedly tries to obtain dismissal on the merits and with prejudice ...................................................................................4

    2.     The district court certifies the class.......................................8

    3.     After class certification, Meta continues to litigate this case on the merits and prepare for trial.............................................9

    4.     On the eve of trial, Meta moves to compel arbitration ......................13

    5.     The district court holds that Meta waived any right to compel arbitration ..................................................................15

Standard of review.............................................................................18

Summary of argument .......................................................................18

Argument........................................................................................ 23

    I.     The district court was correct to decide the question of waiver ......... 23

    II.    The district court correctly decided that Meta waived its right to compel claims against it into arbitration by actively taking advantage of the judicial forum for more than seven years............... 34

        A.     Meta knew of its asserted right to arbitrate against absent class members ................................................................ 35

B.    Meta acted inconsistently with its claimed right to arbitrate ................................................................................ 36

C.    Faithfully applying this Court's decision in *Hill* does not lead to an unworkable rule that violates the Rules Enabling Act ................................................................ 49

Conclusion ............................................................................................ 53

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Michaels Stores, Inc.*,
2018 WL 6505997 (N.D. Cal. Dec. 11, 2018) ....................................... 30

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) ................................................. 17, 36, 38, 47

*Avery v. TEKsystems, Inc.*,
165 F.4th 1219 (9th Cir. 2026) ........................................................ 18

*Bechtel v. Liberty National Bank*,
534 F.2d 1335 (9th Cir. 1976) ........................................................ 41

*Buruk v. Experian Information Solutions, Inc.*,
732 F. Supp. 3d 165 (D. Mass. 2024) ........................................... 28

*Caccuri v. Sony Interactive Entertainment LLC*,
735 F. Supp. 3d 1139 (N.D. Cal. 2024) ......................................... 44

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ..................................................................... 17

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ............................................. 15, 26, 33

*DeVries v. Experian Information Solutions, Inc.*,
2017 WL 733096 (N.D. Cal. Feb. 24, 2017) .............................. 26, 28

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ........................................................ 10

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007) ........................................................ 28

*Ensambles Hyson, S.A. de C.V. v. Sanchez*,
718 F. Supp. 3d 1258 (S.D. Cal. 2024) ......................................... 26

*Evitt v. Experian Information Solutions Inc.*,
2024 WL 1513614 (W.D. Wash. Apr. 8, 2024) ............................... 26

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995).................................................................. 19, 24–25, 30

*Gutierrez v. Wells Fargo Bank, NA,*
889 F.3d 1230 (11th Cir. 2018) ......................................................... 47

*Hill v. Xerox Business Services, LLC,*
59 F.4th 457 (9th Cir. 2023)....................................................... *passim*

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.,*
589 F.3d 917 (8th Cir. 2009)............................................................ 46

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002)........................................................................ 24

*Hunter v. Almufleh,*
2025 WL 3049783 (D. Or. Oct. 31, 2025) ........................................... 33

*In re Chrysler Pacifica Fire Recall Products Liability Litigation,*
143 F.4th 718 (6th Cir. 2025)............................................................27

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation,*
790 F.3d 1112 (10th Cir. 2015) ......................................................... 36

*In re Mercury Interactive Corp. Securities Litigation,*
618 F.3d 988 (9th Cir. 2010)........................................................ 31, 51

*International Energy Ventures Management, LLC, v. United Energy Group, Ltd.,*
999 F.3d 257 (5th Cir. 2021) ...................................................20, 27, 33

*Lamonaco v. Experian Information Solutions, Inc.,*
141 F.4th 1343 (11th Cir. 2025) .................................................... 19, 28

*Marie v. Allied Home Mortgage Corp.,*
402 F.3d 1 (1st Cir. 2005)............................................................ 25, 27

*Martin v. Yasuda,*
829 F.3d 1118 (9th Cir. 2016) .................................................... *passim*

*McKellar v. Mithril Capital Management LLC,*
2020 WL 1233855 (N.D. Cal. Mar. 13, 2020).................................... 33

v

*Meta Platforms, Inc. v. DZ Reserve,*
145 S. Ct. 1051 (2025) ..................................................................................11

*Mohamed v. Uber Technologies, Inc.,*
848 F.3d 1201 (9th Cir. 2016) ...............................................................19, 30

*Money Mailer, LLC v. Brewer,*
2016 WL 1393492 (W.D. Wash. Apr. 8, 2016) ...................................... 33

*Morgan Stanley & Co. LLC v. Couch,*
659 F. App'x 402 (9th Cir. 2016)........................................................... 26

*Morgan v. Sundance, Inc.,*
596 U.S. 411 (2022) ..................................................... 20, 28, 34, 43

*Parker v. Kearney School District,*
130 F.4th 649 (8th Cir. 2025) ............................................................... 35

*Plaintiffs' Shareholders Corp. v. Southern Farm Bureau Life Insurance Co.,*
486 F. App'x 786 (11th Cir. 2012)............................................... 20, 28, 33

*Rent-A-Center, West, Inc. v. Jackson,*
561 U.S. 63 (2010) ............................................................................25, 28

*Saavedra v. Donovan,*
700 F.2d 496 (9th Cir. 1983) ............................................................... 35

*Slaten v. Experian Information Solutions, Inc.,*
2023 WL 6890757 (C.D. Cal. Sept. 6, 2023) ....................................26, 28

*Solis v. Experian Information Solutions, Inc.,*
629 F. Supp. 3d 1016 (C.D. Cal. 2022) .............................................26, 28

*Speerly v. General Motors, LLC,*
143 F.4th 306 (6th Cir. 2025) ...............................................................43

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016)............................................................................ 52

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC,*
871 F.3d 791 (9th Cir. 2017)................................................................ 32

*Valli v. Avis Budget Group Inc.*,
  162 F.4th 396 (3d Cir. 2025) ........................................................... 35, 45, 47, 48, 50

*Van Ness Townhouses v. Mar Industries Corp.*,
  862 F.2d 754 (9th Cir. 1988) .............................................................. 39

*Vine v. PLS Financial Services, Inc.*,
  689 F. App'x 800 (5th Cir. 2017) ....................................................... 27

## **INTRODUCTION**

Way back in 2018, shortly after this putative class action was filed, Meta told the district court that the case was "not … suitable for reference to binding arbitration." SER-277. When Meta made that representation, it knew that at least some members of the putative class could be subject to arbitration. But it did not alert the court and the plaintiffs to that possibility. Instead, true to its word, Meta has vigorously litigated this case for more than seven years at every level of the federal judiciary, including up to the U.S. Supreme Court.

During this time, Meta has done everything it can to get the district court to rule in its favor on numerous issues common to the class. In the first few years of the case alone, Meta filed three successive motions to dismiss on the merits. Then, it moved for judgment on the pleadings. Not satisfied, it then moved for summary judgment—which it renewed after class certification and which remains pending. But Meta's efforts to obtain a complete victory on the merits in court haven't panned out. So, on the eve of trial seven years into the case, the company changed its strategy and moved to compel individual arbitration of the vast majority of class members' claims. And though it had previously confirmed its readiness for trial, Meta asked the court to halt trial preparation in the interim.

Meta made that eleventh-hour request even though the district court had warned the company—more than three years earlier—that it had likely "waived

1

arbitration on this record" when it granted class certification. 2-ER-116. That record included not only Meta's pre-certification dispositive motions, but also answering the claims of class members without asserting any arbitration defense and engaging in nearly two years of extensive discovery, during which it produced almost 100,000 documents, took or defended 22 depositions, and deployed a small army of experts. Had Meta wanted to preserve its arbitration rights as to class members, surely then it would have disputed the district court's suggestion of waiver. It didn't. Instead, the company doubled down on its efforts to prevail in court. Meta *renewed* case-dispositive summary judgment and *Daubert* motions against the entire class, confirmed its readiness for two trial dates, and sent out class notices that told millions of class members to expect their claims to be resolved in federal court soon.

The district court was correct to reject Meta's cynical gambit. Parties may not litigate in court, only to pivot and try to compel arbitration if the case isn't going as they'd like. Meta tries to duck the issue entirely by saying that any questions about its litigation conduct must be resolved by an arbitrator. This Court's precedent regarding the stringent requirements for overcoming the presumption that the court decides such issues says otherwise. Under the plain language of Meta's arbitration provision, the company's waiver remained a question for the court.

Falling back, Meta tries to explain away its years of active litigation by claiming it was only litigating against the named plaintiffs all that time, and not the

2

class members it now seeks to compel into arbitration. *Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023), however, considered—and rejected—that very same argument. There, this Court held that a defendant waived its arbitration rights as to absent class members when it filed an answer that didn't invoke the arbitration clause it later sought to enforce, actively participated in discovery, and moved for summary judgment on the legal theories underlying the merits of class claims. Here, as in *Hill*, Meta filed an answer that didn't mention arbitration, engaged in extensive discovery, and repeatedly asked the court to reject the legal theories underlying the crux of the class claims—both before and after class certification. Meta did all that while maintaining virtual silence about arbitration. If anything, the waiver here is even more clear cut than in *Hill*.

This Court should affirm and allow this class action, finally, to proceed to trial.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly concluded that the parties did not clearly and unmistakably delegate to an arbitrator the issue of waiver by litigation conduct where (i) Meta's Commercial Terms do not explicitly assign that issue to an arbitrator, (ii) those terms override any delegation implicit in the American Arbitration Association's rules, and, in any event, (iii) those rules do not explicitly assign waiver to an arbitrator either?

2. Whether the district court correctly concluded that Meta waived any purported right to compel arbitration of absent class members by actively litigating this case in federal court—even after the district court warned that Meta had likely waived its arbitration rights—including by omitting arbitration from its answer and instead seeking multiple judicial resolutions on the merits of the class claims, seeking extensive discovery, and repeatedly representing to the court, to the plaintiffs, and to absent class members that the case would be resolved in court at trial?

## STATEMENT OF THE CASE

*1. Meta litigates this case in federal court for seven years and repeatedly tries to obtain dismissal on the merits and with prejudice.* This case—brought on behalf of a class of U.S.-based advertisers who paid Meta Platforms, Inc.[1] to place ads on the company's social media platforms—was filed more than seven years ago in August 2018. 2-ER-247. The plaintiffs allege that Meta misrepresented its potential advertising reach to advertisers and charged artificially high premiums for ad placements.[2]

---

[1] This case has been pending long enough that Meta was still known as "Facebook, Inc." when it began. Unless otherwise noted, we refer to the company by its current name throughout.

[2] Unless otherwise noted, all internal quotation marks, citations, and alterations have been omitted from quotations throughout this brief. References to Dkt. are to the district court docket.

4

Meta knew from the start that this putative class action included some of the same class members it now seeks to compel into arbitration.[3] And arbitration was on the company's mind: A few months before the suit was filed, it added an arbitration provision to its Commercial Terms—the very provision it now seeks to enforce. 2-ER-90–91. Even so, Meta told the district court in one of its first filings that it did "not believe that this case is suitable for reference to binding arbitration." SER-277. Instead, it anticipated filing a "motion to dismiss" that "may be dispositive" of the entire case. *Id.*

True to its word, Meta spent the next seven years litigating this case in court, filing dispositive motion after dispositive motion directed to legal and factual issues common to the class. It did so even though, each time, it knew that the operative putative class included advertisers who made purchases after the company adopted the arbitration provision it now seeks to enforce.[4]

Meta tried to secure early dismissal on the merits and "with prejudice" three times. SER-172, 269; 2-ER-211–12. While Meta offered some arguments unique to the

---

[3] *Compare* 2-ER-59 (moving to compel "class members who purchased ads on May 25, 2018, or later"), *with* 2-ER-249 (initial putative class period ran from 2013 "to the present," August 15, 2018).

[4] 2-ER-244 (putative class period ran from 2013 "to the present," September 6, 2018); 2-ER-239 (putative class period ran from 2013 "to the present," December 21, 2018); 2-ER-231 (putative class period ran from 2013 "to the present," June 17, 2019); 2-ER-196 (putative class period ran from 2013 "to the present," July 20, 2021).

5

named plaintiffs (like that they lacked standing), it also moved to dismiss on grounds that were common to the entire class—including that the complaints failed to state statutory, contract, and quasi-contract claims. SER-252–60, 176–85; 2-ER-214–22. These motions necessarily required the court to interpret contractual terms common to the class as well as allegations regarding Meta's misrepresentations about the "potential reach" of ads common to the class. *See, e.g.*, 2-ER-199–200, 202. Noting the extensive litigation that had already taken place, the district court emphasized in its order on Meta's third motion to dismiss that the "next stop for the parties" was either "trial or possibly summary judgment." 2-ER-200. Meta did not alert the court to the possibility of a potential third stop: arbitration.

In all this time, Meta never so much as acknowledged the arbitration clause in its Commercial Terms, even though it had rolled out that clause shortly before the plaintiffs filed suit and, it now admits (at 6–7), it was closely tracking the share of the putative class that might purportedly be subject to that clause. Instead, in support of each of its motions to dismiss, Meta explicitly represented that *other terms* "govern[ed] this dispute." SER-242; *see also* SER-181, 255 n.1; 2-ER-215. Were there any doubt, at the hearing on one of these motions, Meta's counsel asserted that the "plaintiffs agree that Facebook's terms of service is the contract that governs their dispute." SER-197. The court followed up: "That's the only contract; right?" *Id.* Meta's response: "It's the only contract, Your Honor." SER-198. This colloquy left

6

the impression that Meta would not, as it later did, turn around and argue that separate contract terms govern whether class members' claims must be sent to individual arbitration.

When Meta finally answered the complaint, after two and a half years of litigation and multiple rounds of motions to dismiss, it did not assert any right to arbitration. *See generally* SER-137–70. Instead, it identified a laundry list of other potential defenses, many against the "purported class" or "each and every member of the putative class." SER-163–69. Several defenses against "each and every" class member invoked specific "terms of their contract with Facebook"—but, once again, no arbitration provision. SER-164, 167.

At the same time, Meta took yet another crack at the merits. It filed a motion for judgment on the pleadings as to the "equitable relief" sought by the "putative class action." SER-124–25. The district court granted that motion in part, barring potential restitution on the statutory consumer protection claims. SER-115–16. That order made clear that it applied not just to named plaintiffs but potential "class members" too. SER-115. Still, Meta said nothing about arbitration.

Meanwhile, the parties conducted extensive discovery for nearly two years. At Meta's request, the district court entered a stipulated protective order allowing "special protection from public disclosure" for Meta's confidential information. Dkt. 81 at 1. As Meta acknowledges (at 42–43), the company then proceeded to build a

7

factual record in support of its arguments against the claims of the class as a whole. That record was extensive: Meta propounded nearly 150 interrogatories, requests for admission, and requests for production; produced nearly 100,000 documents; offered four experts; and took or defended 22 depositions. *See, e.g.*, SER-59; *see also* 1-ER-7. And, contrary to Meta's suggestion (at 42–43), the record was not specific to the named plaintiffs. For example, based on evidence Meta developed during discovery, Meta later submitted declarations from ten putative class members in its opposition to class certification, Dkt. 296 ¶¶ 4–14, and from experts attempting to refute the plaintiffs' class-wide damages models, *see, e.g.*, Dkt. 361-4.

*2. The district court certifies the class.* The parties then proceeded to litigate class certification and several accompanying *Daubert* motions from Meta. *See* 3-ER-293–94. After nearly three years and four dispositive motions, Meta mentioned arbitration to the district court for the first time in its opposition to class certification. 2-ER-181. Specifically, it identified an arbitration provision in "Facebook's Commercial Terms"—not the terms of "the only contract" it had previously insisted governed the dispute, SER-198—as a reason the named plaintiffs were supposedly atypical and inadequate representatives of the class. 2-ER-181. It did *not* say it planned to move to compel arbitration of any absent class members or to exclude them from the class on that ground. Instead, it said (in a footnote) only that it "has not waived its right to enforce the provision against absent class members." 2-ER-181 n.13.

The court certified a class in March 2022. 2-ER-110. Its order considered and rejected Meta's "blunderbuss of objections," "many" of which were "underdeveloped." 2-ER-111. That included Meta's passing "mention" of arbitration in arguing that the named plaintiffs were inadequate representatives with atypical claims. 2-ER-116. The court rejected this argument for two reasons. First, because the record reflected that the named plaintiffs had purchased ads both before and after Meta's arbitration clause went into effect, the court concluded that they were adequate representatives for class members who might be subject to that clause. *Id.* Second, the court observed that, "[d]espite … knowing of the arbitration clause and its possible application to plaintiffs," Meta had "vigorously litigated this lawsuit in federal court as if arbitration were not an option" for nearly four years. *Id.* It warned Meta: "A good argument can be made that Meta has waived arbitration on this record." *Id.*[5] The court therefore also rejected Meta's arbitration-based argument on typicality and adequacy because Meta had likely abandoned any right to compel arbitration for both the named plaintiffs and absent class members alike.

**3. After class certification, Meta continues to litigate this case on the merits and prepare for trial.** Not once in the three and a half years that

_____

[5] Because the parties had not actually briefed questions of arbitration or waiver, however, the court understandably noted that it could adjust the class definition if, "for some presently unknown reason," there were "arbitration grounds" to do so. *Id*.

followed class certification did Meta even mention arbitration or say anything to dispel the impression that it intended to litigate these claims in federal court.

Instead, Meta actively sought judgment on the merits of the class's claims. Shortly before class certification, Meta filed a motion for summary judgment. 2-ER-128. And while Meta has claimed after the fact (at 46) that this motion was "directed only" at the named plaintiffs, the company made clear at the time that it sought class-wide relief by filing its reply in support of this motion *after* class certification and informing the court that it sought "judgment on Plaintiffs' [remaining] claims." SER-113. Were there any doubt, Meta later told the court that its motion would "dispose[] of the whole case" because it went to a "key critical issue" related to the "only misrepresentation that's left in the case on a class-wide basis." SER-64. The district court understood Meta's motion that way too. SER-48; *see also* SER-49 (explaining that Meta's "summary judgment arguments apply to one person or they apply to a million"); SER-50 (emphasizing that the "legal issues are the same" and the "evidence is the same" across the class).

Summary judgment and trial didn't happen in 2022, however. Instead, Meta sought and obtained appellate review of the district court's class certification order from this Court. *See DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024). Then, after this Court affirmed the district court's certification of the damages class, *id.* at 1230, Meta sought review in the U.S. Supreme Court. *See* Petition for a Writ of

10

Certiorari, *Meta Platforms, Inc. v. DZ Reserve*, No. 24-384 (U.S. Oct. 2, 2024). That effort was unsuccessful, *see Meta Platforms, Inc. v. DZ Reserve*, 145 S. Ct. 1051 (2025), but it did lead to an approximately three-year pause in the proceedings in the district court.

During Meta's multiple appeals, Meta never so much as hinted that an arbitration motion might be waiting in the wings. To the contrary, it sought interlocutory review of the class certification order in part by invoking the massive class-wide liability it faced. In its Rule 23(f) petition, for example, Meta warned that review was essential because, if the case were allowed to proceed as a class action, the potential damages would be "sufficiently high to create inexorable settlement pressure." Petition for Permission to Appeal Class Certification Decision Pursuant to Federal Rule of Civil Procedure 23(f) at 4, 25, *Meta Platforms, Inc. v. DZ Reserve*, No. 22-80029 (9th Cir. Apr. 12, 2022). It never mentioned the word arbitration, let alone that, if it lost the appeal, it could also try to avoid that liability by seeking to compel most class members into individual arbitration.

Both before and after this appellate detour, the company repeatedly confirmed its readiness for impending trial dates—giving no indication that a potential arbitration motion was on the horizon. For example, at a status conference in May 2022, the parties reported that they were "in agreement that [an October 2022 trial] date should hold." SER-85. Similarly, at a status conference in February 2025 following Meta's appeal, the parties presented a "joint" proposal to hold a three-

week jury trial beginning October 2025. SER-57–58, 78–79. The court advised the parties that it would "do everything I can" to hold that trial date because this was the court's "oldest case by far." SER-62. Meta said nothing to suggest those efforts may not be necessary because it would be attempting to siphon a significant portion of the class into individual arbitration.

Instead, after class certification had been affirmed on appeal, the company continued to seek a judicial ruling on the merits of the case as a whole. *See* SER-63. At the same February 2025 status conference, Meta renewed its summary judgment and *Daubert* motions, telling the court that rulings on those motions would determine "whether this case goes forward or not." SER-64–65. The court confirmed it would decide them. SER-72. Meta let more than six months pass with those motions ripe for resolution, with no mention that any of the class claims might belong instead in arbitration.

In April, the court approved the parties' agreed-upon plan for providing notice to millions of class members. Dkts. 470, 471. The notice materials did not mention that Meta might move to compel arbitration. Instead, they told absent class members that "a lawsuit is pending in the United States District Court for the Northern District of California," that the court decided the case "can move forward in a class action," and that a jury trial was scheduled to begin October 14, 2025. SER-37, 39, 42. The notice materials also warned class members that, if they did not

opt out, they would "be bound by any judgment entered or settlement reached in the lawsuit." SER-34–35, 39–40.

Even as the opt-out window drew to a close, Meta continued to tell the plaintiffs that trial preparation was ongoing. In July 2025, counsel for Meta e-mailed a proposed "schedule for the exchange of pretrial materials," which Meta's counsel prefaced: "Exciting to be getting this to trial soon!" SER-5. Between then and August 21—the day Meta finally moved to compel arbitration—Meta's proposal called for the parties to meet and confer twice, exchange drafts of a joint pretrial statement, exchange draft jury instructions and verdict forms, and serve a complete set of pretrial motions in limine on one another. *Id.* Meta never hinted that it planned to throw a wrench into this proposed schedule by seeking to compel nearly all class members into individual arbitration instead.

***4. On the eve of trial, Meta moves to compel arbitration.*** Then, one week before a pretrial conference, Meta filed its motion to compel arbitration. 2-ER-53. This motion wasn't based on any provision contained in the documents it had previously represented "govern this dispute." SER-242. Instead, it relied on an arbitration provision in a separate document, Meta's "Commercial Terms." That provision had been added in May 2018—just months before the lawsuit was filed and more than seven years before Meta moved to compel. 2-ER-59. According to Meta, it had even altered its ad purchasing page to feature those terms more conspicuously

13

in July 2019—in between Meta filing two of its motions to dismiss on the merits. *Id.* But still Meta didn't mention the Commercial Terms, or arbitration, to the district court until its opposition to class certification, and then only in passing. 2-ER-181 & n.13.

According to Meta, because the Commercial Terms were hyperlinked in its Terms of Service, any member of the class who purchased an ad after May 2018 agreed to be bound by them. 2-ER-66–67. Meta's motion didn't address the district court's warning three years prior that it had likely waived any right to arbitration. Nor did it grapple with Meta's persistent efforts to dispose of the case, on the merits, for seven years. And, although it had previously acted as though trial was full steam ahead, Meta asked the court to immediately stay all pretrial proceedings. 2-ER-70.

The plaintiffs opposed Meta's effort to compel class members into arbitration because the company had waived that right "long ago" when it made the "strategic choice to engage the judiciary for resolution of the class claims." 2-ER-45 (quoting *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 477 (9th Cir. 2023)). As the plaintiffs explained, seeking a judicial determination on the merits is the conduct that "most clearly" demonstrates a waiver because it reflects a "preference for judicial resolution … fundamentally inconsistent with the arbitration right." *Id.* (quoting *Hill*, 59 F.4th at 476–77). Meta did that not once, but repeatedly, by filing dispositive motion after dispositive motion both before and after class certification. 2-ER-46.

14

What is more, Meta did all that while also representing that the case wasn't "suitable" for arbitration, omitting any arbitration defense from its answer, engaging in extensive discovery, explicitly representing to absent class members that their claims would be resolved in court, and engaging in a flurry of pretrial activity. 2-ER-46–48. The district court also permitted the plaintiffs to file a sur-reply to respond to Meta's belated argument in its reply that an arbitrator, not the court, should decide the waiver issue. 1-ER-4; 2-ER-17–18.

*5. The district court holds that Meta waived any right to compel arbitration.* The court first made clear the question of Meta's waiver was properly decided by a court, not an arbitrator. The issue of "waiver by litigation conduct," it explained, is "presumptively for judicial determination unless the parties clearly and unmistakably provide otherwise." 1-ER-4 (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016)). That depends on the plain language of the arbitration provision, which here stated: "All issues are for an arbitrator to decide, except that only a court may decide issues relating to the scope or enforceability of this arbitration provision or the interpretation of the prohibition of class and representative actions." 1-ER-5; *see also* 2-ER-82. As the district court recognized, this Court has "definitively reject[ed] Meta's theory" that broad language like this "is tantamount to [a] delegation" of waiver questions. 1-ER-5 (citing *Martin*, 829 F.3d at 1124; *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1117 (9th Cir. 2008)).

And, the court pointed out, the plain language in Meta's contract actually does the opposite of what Meta claimed it did. That's because it reserves *for the court* certain threshold questions of arbitrability, like "enforceability." As the district court explained, that reasonably encompasses waiver too, 1-ER-5—or, at least, does not so clearly and unmistakably exclude such questions as to overcome the presumption. Moreover, this "plain language" reserving for the court at least some questions of arbitrability "overrides any delegation implicit" in the Commercial Terms' separate reference to the AAA's default arbitration rules, which broadly reserve questions of "arbitrability" for an arbitrator. 1-ER-5–6. As a result, the court held, waiver was properly before it. 1-ER-6.

Turning to the question of waiver, the district court concluded that "the totality of Meta's conduct in court amounts to a clear waiver of the contractual arbitration provision with respect to the absent class members." 1-ER-8. As the court recounted, Meta "waged a seven-year campaign of litigating this case" and taking "full advantage of the procedures available in the court system." *Id.* That "record of active litigation in court" included multiple "motions to dismiss, a motion for judgment on the pleadings, an opposition to class certification" and ensuing appeal, "a summary judgment motion, motions to disqualify plaintiffs' expert witnesses, discovery dispute letters, and a jointly agreed … class notice of trial." 1-ER-4–7. Worse still, Meta actively litigated the case while maintaining "virtual

16

silence … about the possibility of arbitration." 1-ER-7. As the court emphasized, the company "mentioned the possibility of arbitration only once"—and that was years into the case in its opposition to class certification. *Id.* And, even then, Meta didn't say that it would actually be seeking to compel arbitration. 1-ER-7–8. The court contrasted Meta's behavior with cases in which this Court concluded there was no waiver because, among other things, the party "pleaded arbitration as an affirmative defense" and "was consistently vocal about its intent to move to compel arbitration." 1-ER-7–8 (quoting *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023)).

Ultimately, the district court expressed "concern[] about the timing of Meta's arbitration request." 1-ER-9. The plaintiffs in this case "have been waiting many years now for their day in court," and Meta's "late" attempt to compel arbitration "just before the start of a jury trial," coupled with its "likely" appeal, would have the effect of delaying even further the plaintiffs' long-awaited "day in court." *Id.*

Sure enough, Meta appealed and the district court was required to stay the case. 3-ER-325. Even so, the district court "request[ed] that the circuit proceed with appropriate expedition when considering [Meta's] interlocutory appeal from the denial of the motion to compel arbitration." 1-ER-9 (quoting *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 747 (2023)).

## STANDARD OF REVIEW

An order denying a motion to compel arbitration is reviewed de novo. *Hill*, 59 F.4th at 468. Any factual findings underlying that denial are reviewed for clear error. *Avery v. TEKsystems, Inc.*, 165 F.4th 1219, 1227 (9th Cir. 2026).

## SUMMARY OF ARGUMENT

**I.** Meta wrongly claims that the district court should not have decided whether Meta waived its right to arbitration because, it says, that was a question for an arbitrator. Both the plain language of Meta's Commercial Terms and binding precedent, however, foreclose that argument.

Whether a party waived its right to arbitrate through litigation conduct is "presumptively" a question "for a court and not an arbitrator to decide." *Martin*, 829 F.3d at 1123. That presumption can be overcome only with "clear and unmistakable" evidence that the parties intended an arbitrator to decide that specific question. *Id.* at 1123–24. As this Court has held, "broad" delegations are not sufficient to overcome the presumption; instead, a contract must include explicit language specifically delegating "*that issue*" of waiver to an arbitrator to meet the "clear and unmistakable" standard. *Id.* at 1124 (emphasis added). That's the consensus among lower courts in this Circuit and courts of appeals across the country, too: No matter how broad, a delegation clause that does not explicitly mention waiver does not clearly and unmistakably delegate questions of waiver. *See Lamonaco v. Experian Info. Sols., Inc.*, 141

18

F.4th 1343, 1348 (11th Cir. 2025) (explaining that a clear and unmistakable delegation involves explicit contractual language specifying that an arbitrator will decide whether either party, "through litigation conduct or otherwise, waived the right to arbitrate").

The language in Meta's Commercial Terms falls far short of this standard. It contains exactly the type of generic, broad delegation clause—purporting to delegate "all issues" to an arbitrator—that this Court has held is insufficient to permit an arbitrator to decide questions of waiver by litigation conduct. 2-ER-82. It also explicitly reserves key categories of threshold questions for a court to decide— including questions of "enforceability." *Id.* Meta claims that, because this reservation doesn't include waiver, the clause silently delegates waiver. But this Court has repeatedly rejected such an "omission" theory of delegation for questions of waiver through litigation conduct. 1-ER-5; *see Martin*, 829 F.3d at 1124 (citing *Cox*, 533 F.3d at 1117); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 n.4 (9th Cir. 2016)). What's more, by reserving questions of "enforceability" for a court, Meta's contract could be read to *explicitly* reserve waiver questions for a court. At a minimum, that lack of clarity forecloses Meta's argument here. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) (delegation requires "clear and unmistakable evidence," not "silence or ambiguity").

19

Meta's fallback argument likewise misses the mark. Looking past the plain language of its arbitration provision, Meta says the parties agreed to delegate questions of waiver because the provision references the AAA's arbitration rules. Meta did not, however, meaningfully advance this argument below, so it's waived. But even if Meta had preserved this argument, it would fail twice over. To start, Meta's Commercial Terms expressly reserve for the court various questions about arbitrability—including regarding scope and enforceability—that the AAA's default rules reserve for an arbitrator. As a result, the "plain language" of the contractual delegation "overrides any delegation implicit in the incorporation of the AAA rules." 1-ER-5–6.

Even on their own terms, moreover, the AAA's arbitration rules do not require an arbitrator to decide whether Meta waived its arbitration rights. Consistent with the overwhelming consensus that a clear and unmistakable delegation of waiver requires specific language, courts also recognize that the incorporation of general arbitration rules is similarly not, on its own, sufficient. *See, e.g., Int'l Energy Ventures Mgmt., LLC, v. United Energy Grp., Ltd.*, 999 F.3d 257, 264–65 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2752 (2022), *overruled on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–17 (2022); *Plaintiffs' S'holders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 789–90 (11th Cir. 2012). And, like Meta's Commercial Terms, the AAA's arbitration rules are silent when it comes to questions of waiver by litigation conduct.

**II.** The district court was also right to conclude that Meta waived its right to arbitrate claims with individual class members. In the class context, this Court has repeatedly held that a party acts inconsistently with, and therefore waives, its right to arbitrate claims—including those against absent class members—by failing to mention arbitration in its answer and instead seeking judicial resolution on the merits and engaging in discovery. *See Hill*, 59 F.4th at 473–77; *Martin*, 829 F.3d at 1126. Meta did all that and more. It didn't assert arbitration as an affirmative defense in its answer; it sought judicial resolution on the merits *five* times, engaged in extensive discovery, and repeatedly confirmed that it was preparing for long-scheduled trial dates.

Meta offers many reasons why this Court should ignore this crystal-clear track record, but this Court already rejected versions of them all in *Hill*. Most fundamentally, Meta tries to excuse its years of litigation by saying that it was just litigating against the named plaintiffs. But that's not true as a matter of fact—Meta explicitly sought, for example, summary judgment as to the *entire* case even after class certification.[6] And it's also not supported by the law—although Meta looks to out-of-circuit precedent, *this* Court has made clear that what matters for waiver is not

---

[6] Indeed, that's true even now. The district court has yet to rule on Meta's renewed motion for class-wide summary judgment, and the company hasn't withdrawn it, notwithstanding its later effort to compel virtually all class claims into individual arbitration.

21

whether a defendant was nominally litigating against named plaintiffs, but whether the effect of the relief sought would effectively undermine the legal theory underlying the class claims too. *Hill*, 59 F.4th at 476 & n.22. That was the case here, five times over.

Meta tries another tack, saying that its litigation conduct all those years doesn't matter because nearly three years into the case, it "*expressly signaled* its intent to 'enforce the arbitration provision'" in its opposition to class certification. Opening Br. 44 (quoting 2-ER-181 n.13). That's patently false. It *mentioned* the arbitration provision in passing and said, in a footnote, only that it hadn't waived its arbitration rights. 2-ER-181 n.13. As this Court has held, repeatedly, that kind of lone statement "is not enough to defeat a claim of waiver," particularly when following the type of extensive litigation that Meta had engaged in before it. *Hill*, 59 F.4th at 471 (quoting *Martin*, 829 F.3d at 1125). In any event, Meta's belated reference prompted the district court to warn the company, back in 2022, that it had likely already waived arbitration. Even then, Meta didn't "set the record straight" and clarify that it intended to move to compel absent class members into arbitration. *See id.* at 481. In fact, it didn't even mention arbitration again for another three years, opting to pursue summary judgment as to the entire class and representing to the court, to the plaintiffs, and to absent class members that it was full steam ahead to trial.

Unable to explain away its extensive litigation, Meta resorts to policy, accusing the district court of creating an unworkable rule that violates both *Hill* and the Rules Enabling Act. It didn't. The district court's decision is faithful to *Hill* and to the purpose of waiver—preventing the very type of "heads I win, tails you lose" gamesmanship that Meta engaged in by keeping arbitration in its back pocket up to the eve of trial. *Id.* at 476. Nor should this Court countenance Meta's argument under the Rules Enabling Act, not only because the company didn't advance it below but also because it makes absolutely no difference here.

This Court should affirm.

## ARGUMENT

### I. The district court was correct to decide the question of waiver.

The district court correctly concluded that Meta failed to show clear and unmistakable evidence overcoming the presumption that a court, not an arbitrator, decides whether Meta waived its right—through its litigation conduct—to arbitrate claims against it. In reaching this conclusion, the court simply read the language of Meta's Commercial Terms, which nowhere references waiver or similar terms. Under this Court's precedent, that language is too general to encompass questions of litigation-related waiver.

As a fallback, Meta points to language in the AAA's default arbitration rules, which are referenced in the Commercial Terms. But Meta waived that argument by

failing to raise it below. Even if the argument were preserved, it would fail on its own terms both because the company's express delegation clause overrides any delegation implicit in the reference to the AAA's rules and because those rules are themselves too general to delegate questions of litigation-related waiver. Without a more specific delegation to the arbitrator, the court was correct to resolve the plaintiffs' waiver argument itself.

**A.** Whether a party waived its right to arbitrate through litigation conduct is a question "presumptively for a court and not an arbitrator to decide." *Martin*, 829 F.3d at 1123. That presumption can be overcome only with "clear and unmistakable" language in the contract proving that the parties specifically intended "that issue" to be decided by an arbitrator. *Id.* at 1124.

As the U.S. Supreme Court has explained, this demanding standard stems from the concern that delegating to the arbitrator certain threshold issues—the kind that "contracting parties would likely have expected a court to have decided"— contravenes the parties' likely intent. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). While it may be reasonable to assume, for example, that parties would expect a particular merits-related dispute to fall within the scope of an arbitration agreement, the "law reverses the presumption" with agreements to arbitrate threshold questions of "arbitrability." *First Options of Chi.*, 514 U.S. at 944–45. Courts may not assume that the parties agreed to arbitrate such questions "unless there is

24

clear and unmistakable evidence that they did so." *Id.* at 944. "[S]ilence or ambiguity" will not do. *Id.* at 944–45.

This concern applies with particular force to the question whether a party waived its right to compel arbitration through its litigation conduct. Parties would expect a court to decide this question because of a court's "comparative expertise": A court will be familiar with the relevant litigation-related activity and only a court has "power to control the course of proceedings before it and to correct abuses of those proceedings." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (1st Cir. 2005); *see Martin*, 829 F.3d at 1123 n.3 (similar). So, only "clear and unmistakable" evidence that the parties instead intended an arbitrator to decide questions of litigation-related waiver will overcome the presumption to the contrary. *Martin*, 829 F.3d at 1123–24; *Marie*, 402 F.3d at 14.

Under this settled standard, "broad" delegations are insufficient to overcome the presumption. *Martin*, 829 F.3d at 1124. Instead, specific language is necessary to clearly and unmistakably delegate waiver by litigation issues. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 65 (2010) (question of unconscionability was for arbitrator to decide because delegation clause "explicitly assign[ed] that decision to the arbitrator"). So in *Martin*, for example, this Court explained that an "all inclusive" statement that an arbitrator must decide "any controversy … arising out of or related to" the parties' agreement was "insufficient to show an intent that an arbitrator

25

decide the waiver by litigation conduct issue." 829 F.3d at 1124 (quoting *Cox*, 533 F.3d at 1117); *see also Morgan Stanley & Co. LLC v. Couch*, 659 F. App'x 402, 404–05 (9th Cir. 2016) (holding that "language" delegating "any dispute as to the arbitrability of a particular issue or claim" "does not encompass disputes over whether the clause remains valid in light of the parties' litigation conduct").[7]

Since *Martin*, the lower courts in this Circuit have faithfully adhered to this rule. No matter how "broad," a delegation clause that "does not mention waiver" does not clearly and unmistakably delegate questions of waiver. *See Slaten v. Experian Info. Sols., Inc.*, 2023 WL 6890757, at *3 (C.D. Cal. Sept. 6, 2023); *Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1270 (S.D. Cal. 2024) (under *Martin*, the question is "whether an agreement clearly, unmistakably, and *specifically* delegates waiver"); *see also, e.g.*, *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016, 1019–20 (C.D. Cal. 2022) ("expansive" clause delegating "all issues" to arbitrator was "insufficient to overcome the presumption" and delegate question of litigation-conduct waiver); *Evitt v. Experian Info. Sols. Inc.*, 2024 WL 1513614, at *4 (W.D. Wash. Apr. 8, 2024) (similar); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *9–10 (N.D. Cal. Feb. 24, 2017) (similar).

---

[7] Meta attempts (at 30 n.7) to distinguish *Cox* because the defendant in that case hadn't argued that the arbitration provision delegated the question of waiver to an arbitrator. That is irrelevant. In *Martin*, this Court looked to the language in *Cox* as an example of "all inclusive" language that fell short of the clear and unmistakable standard and noted that the language in *Martin*, which was "far less broad," fell short too. *Martin*, 829 F.3d at 1124.

There is consensus in the courts of appeal too. In *Marie*, for example, the First Circuit considered language delegating "any and all disputes, claims …, and disagreements … including the arbitrability of any such claim or controversy." 402 F.3d at 14–15. Despite the general reference to "arbitrability" and the use of "any and all," the "clear and unmistakable" standard requires a "clearer indication" that the parties intended "to have *waiver issues* decided by the arbitrator," and the arbitration provision there included "*no* references to waiver or similar terms." *Id.* at 15 (emphases added). In other words, if parties want to delegate that question, it must be "clearly spelled out." *Id.*

The Third, Fifth, Sixth, and Eleventh Circuits concur. The "fact that language in an arbitration agreement is broad enough to cover a particular issue does not mean the language is clear and unmistakable" enough to "rebut the presumption that courts decide litigation-conduct waiver." *Int'l Energy Ventures Mgmt.*, 999 F.3d at 264. Instead, to be clear and unmistakable, the agreement must "expressly give arbitrators the power to resolve questions of waiver through litigation." *Id.* at 264–65; *see also Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 804 (5th Cir. 2017) (no delegation where clause "does not explicitly mention litigation-conduct waiver"); *see also In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 722–23 (6th Cir. 2025) ("broad" language delegating questions of "arbitrability" was not "clear and unmistakable" enough to "overcome the presumption of judicial resolution" of

27

questions of waiver because parties must "explicitly assign" that issue to arbitrator (quoting *Rent-A-Center*, 561 U.S. at 65)); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007), *overruled on other grounds by Morgan*, 596 U.S. 411 (although provision delegated "the issue of arbitrability of any claim or dispute," court would not "interpret the Agreement's silence regarding who decides the waiver issue here as giving the arbitrators that power").

Two cases from the Eleventh Circuit bear this out. In *Plaintiffs' Shareholders Corp.*, the parties had not agreed to "arbitrate issues of conduct-based waiver" because the "arbitration provision [did] not make explicit reference to [such] questions." 486 F. App'x at 789. The agreement in *Lamonaco*, by contrast, did. There, the delegation was "unmistakable" because it was explicit: "All issues are for the arbitrator to decide including … whether you or Experian, through litigation conduct or otherwise, waived the right to arbitrate." 141 F.4th at 1348.[8]

The language Meta relies on here comes nowhere close to meeting this standard. Meta's Commercial Terms provide that "All issues are for an arbitrator to decide, except that only a court may decide issues relating to the scope or

---

[8] The court in *Lamonaco* considered terms that had been amended to explicitly include waiver. *Id.* District courts, including in this Circuit, considering Experian's previous language—which was "broad" because it referenced "all issues" but did "not mention waiver"—consistently concluded that it did not clearly and unmistakably delegate questions of waiver. *See Slaten*, 2023 WL 6890757, at *3; *see also Buruk v. Experian Info. Sols., Inc.*, 732 F. Supp. 3d 165, 170–71 (D. Mass. 2024); *Evitt*, 2024 WL 1513614, at *4; *Solis*, 629 F. Supp. 3d at 1019–20; *DeVries*, 2017 WL 733096, at *9–10.

enforceability of this arbitration provision or the interpretation of the prohibition of class and representative actions." 2-ER-82. Meta claims (at 26, 28) the phrase "all issues" is sufficiently broad to encompass waiver by litigation conduct. But as the district court explained, the case law has "definitively" rejected the argument that a broad delegation clause—including one that purports to cover "all issues"—clearly and unmistakably delegates to the arbitrator "the issue of waiver by not mentioning it." 1-ER-5; *see supra* 28 n.8. And here, there's no mention of waiver at all.

**B.** The provision's specific reservation of key categories of threshold questions for a court to decide—"scope," "enforceability," and class waivers—does not mean the provision silently delegates questions of waiver to an arbitrator. 2-ER-82. Relying on this Court's decision in *Martin*, Meta asserts that questions of "enforceability" do not include questions of waiver. Opening Br. 27–28 (citing *Martin*, 829 F.3d at 1124). So, its argument goes, because the provision here expressly reserves questions of "enforceability" for the court, it must not also reserve questions of waiver. *Id.* at 27. But as the district court put it, such delegation by "omission" would flip the presumption of judicial resolution on its head. 1-ER-5.

Meta's argument also badly misconstrues *Martin*. In *Martin*, this Court held that a clause delegating "all determinations as to the scope, enforceability and effect of this arbitration agreement" did not also delegate questions of waiver by litigation conduct. 829 F.3d at 1120, 1124. That wasn't because "enforceability" necessarily

29

excludes waiver; it was because it doesn't clearly and unmistakably *include* waiver. Put another way, the reference to "enforceability," without more, was "insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption to the contrary." *Id.* at 1124; *see also Mohamed*, 848 F.3d at 1209 & n.4 (suggesting that language delegating "issues relating to … enforceability, revocability or validity" of arbitration agreement "may not have clearly and unmistakably delegated to the arbitrator the authority to decide the question of waiver by litigation conduct" (citing *Martin*, 829 F.3d at 1124–25)).

As the district court held, the "plain language" of Meta's Commercial Terms can reasonably be interpreted to reserve *all* "gateway arbitrability issues, including waiver," for the court. 1-ER-5. At worst, it's ambiguous whether the reservation of "issues relating to [] scope or enforceability" also includes the question whether a party waived its rights to enforce an arbitration agreement. *See Martin*, 829 F.3d at 1124; *Mohamed*, 848 F.3d at 1209 n.4. As the Supreme Court confirmed decades ago, delegation requires "clear and unmistakable evidence," not mere "silence or ambiguity." *First Options of Chi.*, 514 U.S. at 944–45; *see also, e.g., Armstrong v. Michaels Stores, Inc.*, 2018 WL 6505997, at *8 (N.D. Cal. Dec. 11, 2018) (potential for "confusion and ambiguity" in language "a layperson … may not understand" cuts against finding clear and unmistakable delegation of waiver by litigation conduct). So, the

lack of clarity in Meta's contractual language is plainly at odds with the clear and unmistakable delegation that Meta must show.

**C.** Nor does the Commercial Terms' reference to the AAA's arbitration rules constitute clear and unmistakable evidence that the parties agreed to arbitrate the waiver question. According to Meta (at 29), because parties can delegate questions of "arbitrability" when they incorporate arbitration rules into their agreement, the parties delegated the issue of waiver here. This fails for three reasons.

*First*, it's waived. Below, Meta made only passing reference to the AAA's rules and did not rely on those rules to argue that its contract delegated waiver to the arbitrator. 2-ER-26; *see In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (an argument is waived if "not presented or developed before the district court"). That focus is unsurprising; after all, the contract on which Meta relies contains an explicit delegation clause (albeit one that, as explained above, was itself insufficient to delegate this issue to an arbitrator).

*Second*, as the district court held, that explicit delegation clause "overrides" the more general delegation "implicit" in the Commercial Terms' reference to the AAA's arbitration rules. 1-ER-5–6. As explained, the "plain language" of the contractual delegation clause here expressly reserves for the court various questions of arbitrability, including scope and enforceability. 1-ER-5; 2-ER-82. The AAA's default rules, by contrast, reserve those questions for an arbitrator. Opening Br. 29.

As this Court has explained, a "cardinal" rule of contract interpretation is that "when provisions are inconsistent, specific terms control over general ones." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017). In *Welch*, this Court considered an arbitration agreement that included conflicting provisions regarding the scope of the agreement, one broad and one "much narrower." *Id.* "Having chosen to include that [narrower] language," the defendant's "more specific" provision on scope governed. *Id.* This cardinal rule applies with even greater force here, where the conflicting provision is not another section of Meta's Commercial Terms but instead arbitration rules merely referenced in the terms but spelled out elsewhere. Meta is stuck with the language it drafted, and it can't now turn to the AAA's general default simply because its chosen language falls short.

*Third*, Meta's argument about the AAA's default rules is wrong on its own terms. As Meta acknowledges (at 29), those rules do not grant an arbitrator the power to rule on questions of waiver by litigation conduct specifically; instead, they refer to "arbitrability" generally. Consistent with the overwhelming case law that broad language does not clearly and unmistakably delegate questions of litigation-related waiver without express reference to that issue, courts likewise recognize that the incorporation of general arbitration rules is not, on its own, sufficient either. As the Fifth Circuit has explained, "though we've held that the express adoption of AAA rules can sometimes provide clear and unmistakable evidence that the parties agreed

32

to arbitrate an issue," because those "rules do not expressly give arbitrators the power to resolve questions of waiver through litigation," the "incorporation of those rules cannot supply the clear and unmistakable agreement that is required here." *Int'l Energy Ventures Mgmt.*, 999 F.3d at 264–65; *see also Plaintiffs' S'holders Corp.*, 486 F. App'x at 789–90 (similar); *Money Mailer, LLC v. Brewer*, 2016 WL 1393492, at *3 (W.D. Wash. Apr. 8, 2016) ("Even in circuits that have concluded that incorporation of the AAA rules constitutes a clear and unmistakable agreement that the parties will arbitrate arbitrability, courts have properly addressed the question of waiver through litigation conduct despite incorporation of the AAA rules."). That's the case here too.

Against this weight of authority, Meta cites two unpublished district court cases that, it says, held that waiver by litigation conduct must be decided by an arbitrator when an agreement incorporates the AAA's rules. But in *McKellar v. Mithril Capital Management LLC*, 2020 WL 1233855, at *5 (N.D. Cal. Mar. 13, 2020), the defendant did "not make that argument" so the court proceeded to "analyze whether it has waived its right to arbitration." And *Hunter v. Almufleh*, 2025 WL 3049783, at *2 (D. Or. Oct. 31, 2025) cannot be reconciled with the rule in this Court, and in courts across the country, that "broad" and even "all inclusive" language, on its own, does not delegate questions of waiver. *See Martin*, 829 F.3d at 1124 (quoting *Cox*, 533 F.3d at 1117). Applying that rule here, AAA's reference to "arbitrability," without something

33

more specific, is "insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue." *Id.*

Consistent with the plain language of Meta's Commercial Terms, then, the district court was correct to resolve the waiver issue itself.

## II. The district court correctly decided that Meta waived its right to compel claims against it into arbitration by actively taking advantage of the judicial forum for more than seven years.

"[A] party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill*, 59 F.4th at 460.[9] Here, Meta knew all along of its claimed right to compel arbitration. While it complains that the class period changed in the course of litigation, it never disputes that, from the start, the putative class included advertisers purportedly subject to the arbitration clause it now seeks to enforce. And, by actively litigating this case for more than seven years, Meta acted inconsistently with any right to instead have individual claims decided in arbitration. This Court's decision in *Hill* plainly forecloses Meta's arguments to the contrary. Unable to find support in this Court's precedent, Meta resorts to policy—but those arguments do nothing to excuse its obvious waiver here.

---

[9] The Supreme Court recently did away with a third requirement that there be prejudice to the nonmoving party. *Id.* (citing *Morgan*, 596 U.S. at 416–17).

### A. Meta knew of its asserted right to arbitrate against absent class members.

Meta does not seriously dispute that it knew of its claimed right to arbitrate. Nor could it. It was clear from the start of this litigation that the putative class included ad buyers who, Meta now claims, agreed to its Commercial Terms. *Supra* 5 n.3. And the "rule" is that a party "in possession of the contract," like Meta was here, "would have known about its right to arbitrate" under that contract. *Parker v. Kearney Sch. Dist.*, 130 F.4th 649, 654 (8th Cir. 2025); *see, e.g.*, *Saavedra v. Donovan*, 700 F.2d 496, 500 (9th Cir. 1983) (party presumed to know the terms of its own contract). Not only did Meta add the arbitration provision to its Commercial Terms mere months before this class action was filed, it also doubled down on that provision in 2019, in the midst of this litigation, by purporting to feature it more prominently in the ad-purchasing process. 2-ER-59. And, if that weren't enough, Meta itself mentioned its arbitration provision—albeit in passing—in its opposition to class certification in 2021. 2-ER-181.

It is no response that, as Meta suggests (at 49), it may not have had a formal right to compel arbitration of absent class members before class certification, notice, and the opt-out period. This Court has expressly rejected the argument that "knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." *Hill*, 59 F.4th at 469. Other courts agree. *See, e.g.*, *Valli v. Avis Budget Grp. Inc.*, 162 F.4th 396, 408 (3d Cir. 2025) (holding that "knowledge of a right for waiver purposes does not hinge on its immediate enforceability" and

35

listing cases); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015) (rejecting argument that the "right to arbitrate against [absent] class members could not have become known until the class was certified"). So, Meta knowingly slept on its rights.

### B. Meta acted inconsistently with its claimed right to arbitrate.

Meta also "acted inconsistently with" its arbitration rights by "actively litigating" this case for more than seven years "to take advantage of being in court." *Hill*, 59 F.4th at 471 (quoting *Martin*, 59 F.4th at 1125). In all that time, it failed to "set the record straight" and "correct the impression of waiver that [Meta] itself created" that it was waiving its right to arbitrate not just with the named plaintiffs but with absent class members too. *Id.* at 481.

**1.** This Court has set out a clear framework for evaluating whether litigation conduct is inconsistent with a right to arbitrate. "[A] party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015. This inquiry is "holistic" and depends on the "totality" of a party's actions. *Hill*, 59 F.4th at 471 & n.16. Although there is "no concrete test" for waiver, *id.* at 471, this Court has generally found waiver when a defendant does things like answer a complaint without asserting an arbitration defense, seek judicial

36

resolution of the merits by moving to dismiss or for summary judgment, and "engage in standard litigation practice" by participating in status conferences, agreeing to case schedules for proceedings like discovery and trial, and engaging in discovery. *See Hill*, 59 F.4th at 467–68, 471–76; *Martin*, 829 F.3d at 1126.

*Hill* illustrates how this approach applies in the context of a class action. There, this Court held that a defendant had waived its arbitration rights against certain class members after actively litigating the case for nearly eight years. During that time, the defendant answered complaints without asserting a defense based on the arbitration agreement it would later seek to enforce—even though it included other defenses common to the putative class. *Hill*, 59 F.4th at 461–62. It also participated in status conferences, stipulated to a proposed case schedule for discovery, summary judgment, and trial, and then engaged in "extensive discovery," including expert discovery. *Id.* at 467–68, 474–75; *see also id.* at 475 (defendant's participation in discovery reflected an intent to "rel[y] on the judicial discovery mechanism" that would not be available in arbitration).

And before the class was certified, the defendant sought summary judgment on the "threshold legal issue" in the case and then continued to litigate that issue during lengthy appellate proceedings before this Court and the Washington Supreme Court. *Id.* at 464–65, 465 n.9. Seeking a judicial "ruling on the merits" is the conduct that "most clearly" demonstrates waiver because it reflects a "preference

37

for judicial resolution" that is fundamentally at odds with the arbitration right. *Id.* at 476–77. That's because the point of arbitration is that an arbitrator, not the court, resolve the merits. *See Armstrong*, 59 F.4th at 1015 ("Obviously, seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.").

It was only on remand, more than five years into the litigation, that the defendant raised in a joint status report the prospect of arbitration under the agreement it would later seek to enforce. *Hill*, 59 F.4th at 466. And then, it was only after class notice and the opt-out period closed a little less than a year later that the defendant moved to compel arbitration of certain class members. *Id.* at 468. As this Court explained, those "actions present[ed] a clear narrative of [the defendant's] strategic choice to engage the judiciary for resolution of the class claims rather than to obtain a resolution from an arbitrator." *Id.* at 477.

That was the case in *Martin*, too. There, the defendants "did not even note their right to arbitration until almost a year into the litigation and did not move to enforce that right until well after that time." 829 F.3d at 1126. Instead, they "spent seventeen months litigating the case" by "devoting considerable time and effort to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition." *Id.*; *see also, e.g.*, *Van Ness Townhouses v. Mar Indus. Corp.*, 862

38

F.2d 754, 756, 759 (9th Cir. 1988) (holding that party waived its arbitration rights by answering the complaints, moving to dismiss for failure to state a claim, engaging in a pretrial conference, and not claiming a right to arbitrate in any pleading for more than two years).

**2.** Meta did all of this and more. Like the defendants in *Hill*, *Martin*, and *Van Ness*, Meta did not assert an arbitration defense when it answered the plaintiffs' complaint even though it raised other affirmative defenses applicable to the entire class. *See generally* SER-137–77. And while filing even one dispositive motion "on a key merits issue" can suffice, Meta did so *five* times. *See Martin*, 829 F.3d at 1126; *Hill*, 59 F.4th at 476–77; *Van Ness*, 862 F.3d at 756. It first filed three motions to dismiss that each sought, and obtained, dismissal with prejudice of contract and quasi-contract claims that were based on agreements common to the putative class. SER-172, 269; 2-ER-211–12. It then filed a motion for judgment on the pleadings that succeeded in limiting the remedies that would be available if the plaintiffs prevailed on their statutory consumer protection claims at trial. SER 115–16, 124–25. Finally, Meta continued trying to dispose of the remaining claims on the merits, both before and after class certification, by pursuing summary judgment on a "key critical issue" that would otherwise be the "main focus of the trial." SER-64–65.

Meta "actively litigat[ed its] case to take advantage of being in federal court" in other ways too. *Martin*, 829 F.3d at 1125. For example, as in *Martin*, Meta requested,

and received, a protective order from the district court. Dkt. 81. It was then able to pursue discovery while shielding its confidential information from the public eye. *See Martin*, 829 F.3d at 1126 ("entering into a protective order" evinced waiver). In discovery, Meta was able to focus on building an extensive evidentiary record drawn from and directed at the claims of the class as a whole—including declarations from future class members and a small army of experts who attempted to refute the plaintiffs' class-wide evidence, including their damages model. *See, e.g.*, Dkt. 296 ¶¶ 4–14; Dkt. 361-4.

And, like the defendants in *Hill*, *Martin*, and *Van Ness*, Meta here participated in various status conferences without giving any indication that it would later seek to compel a significant portion of the class into arbitration. To the contrary, it repeatedly confirmed its readiness for impending trial dates. SER-57–58, 85. Meta proposed case-related schedules too, continuing to represent that it would be "getting this to trial soon" while proposing a flurry of pretrial activity. SER-5. And, in the agreed-upon class notice—the only express communication with the class—Meta did not disclose to the millions of class members seeking to evaluate their options that it might ultimately seek to force the vast majority of them into arbitration to resolve their claims on an individual basis. Instead, it explicitly told class members that the court had allowed the case to "move forward in a class action" and that they should expect their claims to be resolved, in court, soon because a trial was scheduled for

40

the fall. SER-39, 42. Of course, that trial remains in perpetual delay because Meta moved—after more than seven years of active litigation—to compel nearly all class members into individual arbitration.

**3.** None of Meta's responses are persuasive. Meta tries to explain away the "clear narrative" of its litigation track record, but this Court already considered and rejected versions of each of Meta's arguments in *Hill*.

**a.** Start with the controlling standard. Meta asserts that litigation conduct is inconsistent with a right to arbitrate only if "no other reasonable explanation of the conduct is possible." Opening Br. 32 (quoting *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340 (9th Cir. 1976)). But that's effectively the standard that the majority in *Hill* rejected. While the *Hill* dissent argued that only "concrete acts" could evince the requisite intent, this Court confirmed that "inferences drawn" from "seemingly commonplace" acts could also suffice. *Compare Hill*, 59 F.4th at 472, *with id.* at 483–84 (VanDyke, J., dissenting). As the majority explained, assessing the "totality of the []actions" "guarantees that ambiguous actions are not explained away" when, in reality, they reflect an intent to take advantage of the judicial forum in a manner "inconsistent with that party's right to have such claims resolved in an arbitration forum." *Id.* at 471 & n.16.

**b.** Meta's actions here, moreover, were unambiguous. After telling the district court the case wasn't "suitable" for arbitration, SER-277, it sought favorable judicial

41

rulings on the merits *five* times. Meta's only response (at 40–41) is to accuse the district court of improperly finding that Meta waived its arbitration rights as to absent class members simply because it chose to litigate against the named plaintiffs. But to make that argument, Meta must distort the facts and ignore the law.

Meta tries (at 38, 46) to recast its repeated attempts to obtain favorable judicial rulings on the merits as "directed squarely" and "only" at the named plaintiffs, not absent class members. That's simply not true. Take Meta's summary judgment motion. Meta says (at 46) that this motion came "before a class was certified." But Meta explicitly sought class-wide relief when it filed its reply—*after* the class was certified—and continued to seek judgment on all "remaining claims." SER-113. And were there any doubt, Meta renewed its summary judgment motion after class certification was affirmed on appeal, stating that a ruling in its favor would "dispose[]" of the whole case" by addressing "the only misrepresentation that's left in the case on a class-wide basis." SER-64–65. This attempt to "end the litigation in one fell swoop *judicially* … could not be more inconsistent with [Meta's] arbitration right." *Hill*, 59 F.4th at 476 n.22. That alone is enough to conclude that Meta made the "strategic choice to engage the judiciary for resolution of the class claims." *Id.* at 477.[10]

---

[10] Meta also urges (at 47) the Court to ignore its summary judgment motion because the district court hasn't ruled on it yet. That's beside the point. "[W]hatever

Meta's attempted reframe is also directly foreclosed by *Hill*. Meta cites (at 41) out-of-circuit precedent like *Speerly v. General Motors, LLC*, 143 F.4th 306, 336 (6th Cir. 2025), for the proposition that waiving "the right to resolve the named plaintiffs' claims by arbitration … does not speak for the unnamed class members." But even *Speerly* does not stand for the proposition that *all* pre-certification litigation conduct is irrelevant. And if it did, that wouldn't matter here because, as Meta admits (at 35), this Court held the opposite in *Hill*.

In *Hill*, this Court made plain that it does not parse a defendant's dispositive filings in the way Meta does. Like Meta, the dissent in *Hill* framed "the summary judgment motion as being directed only at Hill and her claims," and not the absent class members' claims. *Hill*, 59 F.4th at 476 n.22; *id.* at 487–88 & 488 n.1, 493–94 (VanDyke, J., dissenting). The majority disagreed: Even if the defendant "may have nominally been litigating against Hill" when it moved, pre-certification, for summary judgment, the Court considered whether that filing nonetheless sought "a judicial resolution on the merits of the causes of actions undergirding all the class claims." *Id.* at 476 n.22. It did. The defendant's motion went to the "legal heart" of the case— there, whether a particular type of compensation structure violated the state

---

the judge may have done, the defendants *sought* a ruling on the merits." *Martin*, 829 F.3d at 1126 n.4; *see Morgan*, 596 U.S. at 417 (waiver inquiry "focuses on the actions of the person who held the right" to arbitrate). Even if it didn't pay off, this is exactly the "attempt to play a game of 'heads I win, tails you lose'" that the waiver rule is meant to prevent. *Hill*, 59 F.4th at 477.

43

minimum wage act. *Id.* at 473. So, timing notwithstanding, the motion was probative of waiver with respect to absent class members because their "claims were implicated" by the challenge to the "merits of the legal theory underlying the claims" "to the same extent" as were the named plaintiffs' claims. *Id.*; *see also, e.g.*, *Caccuri v. Sony Interactive Ent. LLC*, 735 F. Supp. 3d 1139, 1155 (N.D. Cal. 2024) (relying on *Hill* to reject argument that defendant's "motions to dismiss were directed only at the named Plaintiffs").

The same is true here. Both before and after certification, Meta sought favorable judicial rulings on the legal theories underlying the claims brought by the named plaintiffs personally and on behalf of the class members alike. That's obviously the case with its summary judgment motion and renewed summary judgment motion, both of which Meta promised would "dispose[] of the whole case." SER-64–65. Meta's pre-certification filings similarly sought court orders on the merits of issues common to the class. Its three motions to dismiss enabled Meta to secure favorable interpretations of its contracts that went to the crux of the contract and quasi-contract claims. *Id.*; 2-ER-202 (dismissing with prejudice the breach of contract claim because contract terms did "not create a contractual obligation"); 2-ER-200 (dismissing with prejudice the quasi-contract claim and claim for breach of the implied covenant of good faith and fair dealing as coextensive with the breach of contract claim). And by successfully limiting the relief available on the surviving

44

statutory consumer protection claims, Meta's motion for judgment on the pleadings likewise "implicated" the class's claims "to the same extent as" the named plaintiffs' claims. *Hill*, 59 F.4th at 473; SER-115 (confirming that ruling applied to "class members" too).

**c.** Meta similarly attempts to paper over another way it took advantage of being in court. It claims (at 42) that seeking discovery relevant to both arbitrable and non-arbitrable claims—like the named plaintiffs' claims here—is "not inconsistent with an intent to arbitrate." Not quite. Such conduct "does not, *by itself*, waive the right to arbitrate arbitrable claims." *Valli*, 162 F.4th at 412 (emphasis added). But this Court does not view "each act … in isolation." *Hill*, 59 F.4th at 471 n.16. And in context, Meta's discovery conduct goes to its "consistent and intentional practice of seeking judicial resolution." *Id.* Consider what it did: After class certification was affirmed on appeal, Meta renewed its *Daubert* motions attacking the class-wide evidence developed during discovery. And it told the court that, like its renewed summary judgment motion, its *Daubert* motion—which sought to exclude an expert focused on the "impact" from the only "class-wide" misrepresentation left—would determine "whether this case goes forward or not." SER-64–65. That's another example of trying to "end the litigation in one fell swoop *judicially*." *Hill*, 59 F.4th at 476 n.22.

**d.** Meta's final response is that its litigation conduct is beside the point because it "*expressly signaled* its intent to 'enforce the arbitration provision against absent class members' should a class be certified." Opening Br. 44 (quoting 2-ER-181 n.13); *see also id.* at 51. That stretches Meta's passing reference to arbitration beyond recognition. Nearly three years into litigation, Meta mentioned its arbitration clause for the first time. In opposing class certification, Meta said, in a footnote, merely that it "*has not waived* its right to enforce the provision against absent class members." 2-ER-181 n.13 (emphasis added). That statement is, as the district court found below, "well short of saying that it would actually seek to enforce" the arbitration provision. 1-ER-7–8. After all, a "reservation of rights is not an assertion of rights." *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 923 (8th Cir. 2009). That is why this Court has found, repeatedly, that a lone "statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Hill*, 59 F.4th at 471 (quoting *Martin*, 829 F.3d at 1125); *see, e.g.*, *Martin*, 829 F.3d at 1126.

In any event, Meta's sole reference to arbitration came long after the company had already indicated its preference for a judicial resolution of all claims, including those of absent class members—far from the "timely" corrective Meta now claims (at 37). A party's "extended silence" can "indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims" and, thus, an inference of waiver. *Hill*, 59 F.4th at 473 n.19 (quoting *Martin*, 829 F.3d at 1125).

46

Contrast Meta's approach with that of the defendant in *Armstrong*, where this Court found no waiver. *See* 59 F.4th at 1013. That defendant was "consistently vocal about its intent to move to compel arbitration": It expressly "pleaded arbitration as an affirmative defense in its answers"; it "explicitly" advised that it planned to move to compel arbitration in a joint case management statement; and it reiterated that intent at the initial case management conference. *Id.* at 1015–16; *see also, e.g.*, *Valli*, 162 F.4th at 412 (no waiver where defendant "repeatedly put its intent to arbitrate on the record"). Meta's conduct bears no resemblance. It did not raise arbitration as a potential defense in its answer, even though it raised other defenses applicable to absent class members. And it did not "explicitly" and "repeatedly" express an intent to move to compel absent class members into arbitration.[11]

In fact, Meta did the opposite. At the start of the litigation, Meta represented that the case wasn't "suitable" for arbitration—even though the putative class already included some of the class members it now seeks to compel. SER-277. It then litigated the case for nearly three years without mentioning arbitration. After this

---

[11] The out-of-circuit cases Meta cite are not to the contrary because they, too, involve early notice to the court and to the plaintiffs. Again, in *Valli* (cited at 44), the defendant pled arbitration as an affirmative defense and "reiterated that position" multiple times before raising arbitration as a ground to defeat class certification. 162 F.4th at 411–12. And in *Gutierrez v. Wells Fargo Bank, NA* (cited at 52), the defendant expressly reserved its arbitration rights as to class members in response to an early scheduling order and reasserted those rights in its answer. 889 F.3d 1230, 1238–39 (11th Cir. 2018). Meta, of course, did none of that.

extended silence, Meta's belated reference to arbitration prompted the district court to warn, in its 2022 order certifying the class, that a "good argument can be made that Meta has waived arbitration on the record." 2-ER-116.[12] At that time, if not sooner, had Meta "wanted to preserve its arbitration rights" against absent class members, it "had a choice to set the record straight by dispelling the notion that it was waiving its rights." *Hill*, 59 F.4th at 481; *see also Valli*, 162 F.4th at 410 (similar). But Meta did not "correct the impression of waiver that [Meta] itself created." *Hill*, 59 F.4th at 481. Instead, it stayed silent on arbitration for the next three years, opting to pursue summary judgment as to the entire case and representing to the court, to the plaintiffs, and to absent class members that it was full steam ahead to trial.

Its lack of candor to millions of class members is particularly telling. As part of the parties' agreed-upon class notice, Meta told absent class members that the case was proceeding as a class action in court, that a trial was scheduled in the fall, and that they'd be bound by any judgment or settlement reached—even though it had plans to force the vast majority of them into individual arbitration. SER-34–35, 37,

---

[12] In its statement (at 15), Meta mischaracterizes this warning as applying only "to the named plaintiffs." But the district court specified when it was talking only about the named plaintiffs, and it didn't do so there. 2-ER-116. What's more, the court made this observation in rejecting Meta's argument that the named plaintiffs were atypical and inadequate because, unlike the named plaintiffs, absent class members may be subject to arbitration. *Id.* The court found instead that the named plaintiffs and absent class members were similarly situated both because the named plaintiffs were also arguably subject to Meta's arbitration clause and because Meta had likely waived its arbitration rights as to the named plaintiffs and class members alike. *Id.*

39–42. Meta suggests (at 48) that this was a "sensible omission" of what would otherwise have been a "confusing reference to arbitration in the class notice." But class notices reference potential arbitration defenses without raising concerns. *See, e.g.*, *Hill*, 59 F.4th at 478 (agreed-upon class notice informed class members that "Defendants have also raised other defenses including … that other Class Members are required to pursue their claims through individual arbitration"). They do so because it is accurate and clarifying, particularly because a class notice is often the only express communication class members will receive about a case before they must make the important decision whether to opt-out and proceed on their own. As it was, Meta left millions of class members with the misimpression that the class claims would be resolved together, likely at an upcoming trial. Meta left the district court and the plaintiffs with that same misimpression by continuing to act like it was preparing for that trial until it finally moved to compel at the eleventh hour. SER-5, 57–58.

### C. Faithfully applying this Court's decision in *Hill* does not lead to an unworkable rule that violates the Rules Enabling Act.

Falling back, Meta accuses the district court of creating an unworkable rule that somehow violates *Hill* and the Rules Enabling Act. Far from it. The district court faithfully applied *Hill* and its decision is consistent with the Rules Enabling Act and, in fact, reflects the whole point of waiver: to prevent the very gamesmanship

49

Meta engaged in up to the eve of trial by keeping arbitration in reserve just in case the court denied, again, its effort to resolve the case outright.

**1.** Meta first warns (at 40–41) that if the district court's decision is left to stand, defendants will be found to have waived their arbitration rights as to absent class members every time they choose to proceed in court against the named plaintiffs. According to Meta (at 51), "litigation would grind to a halt" because a defendant couldn't "engag[e] in the basic necessities of litigation with named plaintiffs" without waiving their rights to arbitrate against absent class members, but also couldn't move to compel those class members in the meantime.

That is nonsense. This Court and others have already told defendants exactly what to do to "preserve future arbitration rights" they cannot presently enforce: "give clear, reasonably prompt record notice of [an] intent to exercise its arbitration right." *Valli*, 162 F.4th at 410; *see also Hill*, 59 F4th at 481–82 n.26. That Meta simply failed to do that here does not mean that the district court's faithful application of *Hill* amounts to what Meta asserts (at 50) is a "sweeping and unworkable forfeiture regime." Indeed, as with Meta's other arguments, this Court considered and rejected that very accusation in *Hill*. 59 F.4th at 481 (taking into account defendant's failure "to set the record straight" does not amount to "laying down a 'use it or lose it' rule" applicable in "a forfeiture case").

**2.** Nor does the district court's finding of waiver on this record violate *Hill* or the Rules Enabling Act, as Meta contends. Meta suggests (at 52–53) that, because *Hill* requires acts "inconsistent" with an "existing" right to arbitrate, conduct undertaken before parties actually form an arbitration agreement is irrelevant. And "at least some" class members, Meta says (at 53–54), didn't enter into the relevant contract until the very end of the class period in October 2021. So for them, what Meta calls the district court's "blanket approach" to waiver—considering Meta's "seven-year campaign of litigation" in full—improperly swept in early conduct that, the company believes, could not have been inconsistent with an existing right. *Id.*

The problem is that, to the extent the Court even considers it, Meta's argument makes absolutely no difference here.[13] Consider just a sampling of what Meta did after October 2021, the date Meta says matters: It twice pursued case-dispositive summary judgment and *Daubert* motions that went to the key remaining "class-wide" issue in the case; it confirmed that it was prepared to go to trial; and it told millions of absent class members they could expect their claims to be resolved, on a class basis, in federal court. *Supra* 9–13. Add to the list the fact that the district court put Meta on notice that it had likely waived its arbitration rights as to the entire class back in March 2022. 2-ER-116. There's no reason the district court couldn't also

---

[13] Because Meta did not raise this argument below, it's waived. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at 992.

consider Meta's failure to "set the record straight" after that, even if part of the record included its conduct before the end of the class period. *See Hill*, 59 F.4th at 481. Taken together, this litigation track record and Meta's extended silence is more than enough to affirm the district court's conclusion that Meta waived its rights as to each and every class member.

Meta's Rules Enabling Act argument fails for the same reason. Meta says that the district court's approach violates the act's prohibition on giving class members "different rights" than they would have "in an individual action" by excusing at least some class members from having to prove waiver under *Hill*. Opening Br. 55 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016)). But as just explained, the district court didn't do that. Even accepting Meta's interpretation of *Hill*, the company's later conduct alone easily established waiver as to the entire class.

Ultimately, Meta's theory not only would make no difference in this case, it would also reward the very kind of gamesmanship that waiver is designed to prevent. Take a defendant who is still engaged in the practice that is the target of the litigation. If Meta is correct, that defendant could litigate aggressively to gain whatever merits advantages possible, and even disclaim any intent to arbitrate, only to pivot to compel arbitration of the class members it happened to injure last. It would also mean that a defendant could, as Meta did here, effectively delay resolution for years on end, wasting judicial and party resources by actively litigating the case up to the

moment it sees the writing on the wall—only to draw out the process further by asking to stay proceedings while it seeks to enforce rights long ago waived and, once a court sees through that transparent tactic, take advantage of an automatic appeal.

These results are intolerable and the law doesn't permit them.

## CONCLUSION

This Court should affirm the order denying Meta's motion to compel arbitration.

Respectfully submitted,

*/s/ Matthew W.H. Wessler*
MATTHEW W.H. WESSLER
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*matt@guptawessler.com*

HANNAH M. KIESCHNICK
GUPTA WESSLER LLP
235 Montgomery Street
Suite 629
San Francisco, CA 94104
(415) 573-0336
*hannah@guptawessler.com*

CHARLES REICHMANN
LAW OFFICES OF CHARLES REICHMANN
16 Yale Circle
Kensington, CA 94708
(510) 558-3366

53

*charles.reichmann@gmail.com*

GEOFFREY GRABER
ERIC A. KAFKA
KARINA GRACE PUTTIEVA
MADELYN PETERSON
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, NW
Fifth Floor
Washington, DC 20005
(202) 408-4600
*ggraber@cohenmilstein.com*
*ekafka@cohenmilstein.com*
*kputtieva@cohenmilstein.com*
*mpetersen@cohenmilstein.com*

March 27, 2026                     *Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,433 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

March 27, 2026

*s/ Matthew W.H. Wessler*
Matthew W.H. Wessler