**No. 25-7657**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

—————————————————————————

**DZ RESERVE AND CAIN MAXWELL,**

*Plaintiffs-Appellees*,

v.

**META PLATFORMS, INC.,**

*Defendant-Appellant*.

—————————————————————————

On Appeal from the United States District Court
for the Northern District of California, Case No. 3:18-cv-04978-JD
The Honorable James Donato

—————————————————————————

**REPLY BRIEF OF APPELLANT META PLATFORMS, INC.**

—————————————————————————

Melanie M. Blunschi
Francis J. Acott
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Samir Deger-Sen
Nikita Kansra
Kristin C. Holladay
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

April 17, 2026

Andrew B. Clubok
Susan E. Engel
Margaret A. Upshaw
Brittany M.J. Record
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.clubok@lw.com

*Counsel for Appellant Meta Platforms, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................4

I.    THE DISTRICT COURT SHOULD NOT HAVE DECIDED THE WAIVER ISSUE ..............................................................................4

II.   META DID NOT WAIVE ITS ARBITRATION RIGHTS AGAINST MILLIONS OF UNNAMED CLASS MEMBERS ......................................11

    A.    Waiver Is Not The Only "Reasonable Explanation" For Meta's Litigation Conduct.............................................................12

    B.    Meta Expressly Signaled Its Intent To Arbitrate At The Appropriate Time .................................................................21

    C.    Plaintiffs Distort *Hill* And Demand Senseless Requirements.............24

CONCLUSION ..............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ..................................................15, 17

*Arizona v. Tohono O'odham Nation*,
818 F.3d 549 (9th Cir. 2016) ............................................2, 13, 21, 23

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) ..........................................................16

*Bechtel v. Liberty National Bank*,
534 F.2d 1335 (9th Cir. 1976) ...................................................*passim*

*Berzanskis v. FCA US, LLC (In re Chrysler Pacifica Fire Recall
Products Liability Litigation)*,
143 F.4th 718 (6th Cir. 2025) .......................................................5, 10

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .............................................................7

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024)........................................................................1, 4

*Department of Agriculture Rural Development Rural
Housing Service v. Kirtz*,
601 U.S. 42 (2024)..............................................................................6

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007) .............................................................10

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)............................................................................4

*Gutierrez v. Wells Fargo Bank, NA*,
889 F.3d 1230 (11th Cir. 2018) ........................................................27

*Hill v. Xerox Business Services, LLC*,
59 F.4th 457 (9th Cir. 2023) ......................................................*passim*

**Page(s)**

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)......................................................................................7

*International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*,
999 F.3d 257 (5th Cir. 2021) ...................................................................10

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
599 U.S. 382 (2023)..................................................................................6, 9

*Marie v. Allied Home Mortgage Corp.*,
402 F.3d 1 (1st Cir. 2005).............................................................................9

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ...............................................5, 6, 8, 26

*Morgan Stanley & Co. v. Couch*,
659 F. App'x 402 (9th Cir. 2016).................................................................8

*Moser v. Benefytt, Inc.*,
8 F.4th 872 (9th Cir. 2021) ..................................................................23, 26

*Oracle America, Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013) ...................................................................11

*Plaintiffs' Shareholders Corp. v. Southern Farm Bureau Life Insurance Co.*,
486 F. App'x 786 (11th Cir. 2012)..............................................................10

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)......................................................................................6, 7

*Sandler v. Modernizing Medicine, Inc.*,
-- F.4th --, 2026 WL 773099 (9th Cir. 2026) ............................................4

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................................................................................28

iii

**Page(s)**

*United States v. Williams*,
846 F.3d 303 (9th Cir. 2016) ..............................................................29

*Van Ness Townhouses v. Mar Industries Corp.*,
862 F.2d 754 (9th Cir. 1988) ..............................................................26

*Vine v. PLS Financial Services, Inc.*,
689 F. App'x 800 (5th Cir. 2017) ........................................................10

iv

## INTRODUCTION

The district court entered an order of breathtaking scale, finding that Meta intentionally relinquished arbitration rights as to millions of unnamed class members, despite expressly reserving its arbitration rights and *never* seeking a merits resolution of those members' claims. The decision conflated actions directed at *named* plaintiffs with those directed at *unnamed* members of the class. And it relied on acts Meta took before a portion of the class had even agreed to arbitrate. Plaintiffs repeat those same errors, barely engaging with the flaws at the heart of the decision.

On the delegation issue, Plaintiffs largely abandon the district court's indefensible rationale that waiver by litigation conduct is an issue of "scope or enforceability" reserved for the court. Instead, Plaintiffs pivot to a new—and much broader—theory: that a delegation clause must specifically reference conduct-based waiver by name to assign that issue to the arbitrator. That magic-words requirement finds no support in this Court's precedent and would effectively create a super-presumption in favor of courts resolving waiver, violating the Supreme Court's instruction that arbitration agreements should be placed on "equal footing with other contracts." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148-49 (2024) (citation omitted). In resolving waiver, the district court wrongly decided an issue delegated to the arbitrator.

Plaintiffs' defense of the district court's waiver holding fares no better. The bar for finding conduct-based waiver is high: A litigant's acts must "so manifestly" indicate "an intent to relinquish" its rights "that no other reasonable explanation of [the] conduct is possible." *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340 (9th Cir. 1976) (citation omitted). Plaintiffs embrace the district court's broad-brush analysis, claiming waiver based on the fact that Meta "vigorously litigated" a case that it undisputedly *had to litigate* as to the named plaintiffs and those class members who never agreed to arbitrate. Answering Brief ("AB") 1. And Plaintiffs flatly ignore that much of Meta's litigation conduct—including its appeal "up to the U.S. Supreme Court," *id.*—maintained that the unnamed class members' claims *could not* be resolved in this litigation because the case was not suitable for class treatment. Far from seeking judicial resolution of all unnamed class members' claims, Meta argued repeatedly that no such resolution was permissible. And along the way, Meta laid down a clear marker that it intended to pursue "its right to enforce the [arbitration] provision against absent class members" if a class were ultimately certified. 2-ER-181 n.13.

Plaintiffs disregard the facts and construct a self-serving narrative. But they cannot point to "'clear, decisive and unequivocal' conduct which indicates" Meta's supposed intent to resolve the claims of unnamed class members who agreed to arbitrate. *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559-60 (9th Cir. 2016)

(citation omitted). The doctrine of waiver by litigation conduct exists to prevent a litigant from trying to resolve a case in court, only to later seek a do-over in arbitration. That is not what happened here. Meta never sought to resolve unnamed class members' claims in court. And, for all their talk of gamesmanship, a "cynical gambit," and "the eve of trial," AB2, 23, 50, Plaintiffs do not identify any *conduct* that Meta should not have engaged in. Instead, they say only that Meta should have given more notice of its intent to arbitrate. But if all that Meta should have done differently is flag its rights more often (at unspecified times in unspecified ways), then Plaintiffs are urging the kind of "forfeiture" rule that this Court has rejected. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 472 n.18, 481 (9th Cir. 2023).

In short, this is not a situation where a defendant seeks two bites at the apple. This case is about what happens when a defendant chooses to litigate against the named plaintiffs (and later *must* litigate against some portion of a certified class) but wants to preserve (and at the appropriate time, enforce) its right to arbitrate against class members bound by an arbitration clause. Against that backdrop, Meta's conduct did not "so manifestly" reflect "an intent to relinquish" its arbitration rights against unnamed class members "that no other reasonable explanation . . . is possible." *Bechtel*, 534 F.2d at 1340 (citation omitted).

3

## ARGUMENT

## I. THE DISTRICT COURT SHOULD NOT HAVE DECIDED THE WAIVER ISSUE

1. Arbitration agreements are subject to the same "traditional contract principles" as other contracts. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024) (citation omitted). So, although a delegation of arbitrability must be clear and unmistakable, a court must apply established "principle[s] of contract construction" to determine whether the text of an arbitration agreement is clear. *Sandler v. Modernizing Med., Inc.*, -- F.4th --, 2026 WL 773099, at *3 (9th Cir. 2026) (citation omitted).

Here, basic contract interpretation shows that the parties clearly delegated the issue of waiver by litigation conduct. They agreed that "*[a]ll* issues are for an arbitrator to decide," except for the "scope or enforceability of th[e] arbitration provision" and the interpretation of the prohibition on class actions. 2-ER-82 (§ 5.c.ii) (emphasis added). Because none of the categories in the carveout applies, *see* Opening Brief ("OB") 26-28, waiver by litigation conduct falls within the broad delegation of "all issues."

The delegation is especially clear because the parties specifically considered *which* subjects to carve out. As the Supreme Court has explained, the clear-and-unmistakable requirement is grounded in the concern that parties may fail to "focus upon" the "arcane" question of "who" should decide arbitrability issues. *First*

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). Here, the parties *did* "focus upon" delegation, specifically delineating issues that would be exempt—and not including waiver among them.

The district court held otherwise by wrongly concluding that, as a matter of "plain language," the phrase "'scope or enforceability of this arbitration provision'" includes "gateway arbitrability issues, including waiver." 1-ER-5 (quoting 2-ER-82 (§ 5.c.ii)). But the phrase "scope or enforceability of this arbitration provision" describes inherent features of the provision itself—such as which disputes fall within the arbitration agreement ("scope") and whether the provision is unconscionable or runs afoul of applicable law ("enforceability"). *See* AB27. *Martin v. Yasuda* makes that clear: There, this Court held that delegating "determinations as to the [agreement's] scope[] [and] enforceability" was "*insufficient* to show an intent that an arbitrator decide the waiver by litigation conduct issue." 829 F.3d 1118, 1124 (9th Cir. 2016) (emphasis added); *see also Berzanskis v. FCA US, LLC (In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.)*, 143 F.4th 718, 723 (6th Cir. 2025) (same). The district court's rationale therefore violates *Martin* and misconstrues the agreement's plain text. And tellingly, Plaintiffs do not even try to defend it, stating only that the reference to "enforceability" "*could* be read" to reserve conduct-based waiver for the court but citing no authority holding that "enforceability" encompasses waiver. AB19 (emphasis added).

2.      Plaintiffs instead attempt to overcome the text's clear import by asking this Court to impose a magic-words requirement.  Plaintiffs argue that because the arbitration agreement "nowhere references waiver," waiver by litigation conduct necessarily was for the court to decide.  AB23; *see also* AB18, 25 (suggesting that delegation clause must "explicitly mention" the word "waiver").  That is wrong.  Both the Supreme Court and this Court require only that an agreement include "clear and unmistakable language" demonstrating that an issue is delegated to an arbitrator, *Martin*, 829 F.3d at 1124—not magic words or "specific language" enumerating each issue the arbitrator may decide, AB20.  In the statutory clear-statement context, for example, the Supreme Court has explained that even where a clear statement is required (*e.g.*, to abrogate sovereign immunity), "no magic words are required," and "each statute must be evaluated on its own terms."  *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 52 (2024) (citation omitted); *see also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023) (deciding whether abrogation was "clearly discernable" using "traditional" statutory interpretation tools).

That principle applies with full force to delegation clauses.  In *Rent-A-Center, West, Inc. v. Jackson*, for example, the Supreme Court accepted that the parties' delegation of "enforceability" clearly and unmistakably delegated the issue of unconscionability, even though the delegation provision did not specifically

6

reference "unconscionability." 561 U.S. 63, 68 (2010). And in *Caremark, LLC v. Chickasaw Nation*, this Court held that the issue of whether a federal statute precluded application of the arbitration agreement was clearly and unmistakably delegated by (1) some agreements' incorporation of the AAA rules and (2) later agreements' delegation of "any dispute relating to the interpretation, applicability, [or] enforceability" of "the agreement to arbitrate." 43 F.4th 1021, 1031, 1033-34 (9th Cir. 2022). That was so even though neither the AAA rules nor the delegation clause specifically referenced statutory defenses to arbitration.

Plaintiffs suggest that the clear-and-unmistakable standard applies "with particular force" to waiver by litigation conduct because of courts' "comparative expertise." AB25. But that consideration is already baked into the initial presumption that such issues are for the court *absent* a clear delegation. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (considering "comparative expertise" to determine initial presumption). And one can always argue that courts have unique expertise—whether in this context, interpreting statutory issues as in *Caremark*, or other circumstances. Yet parties are unquestionably entitled to delegate such issues to the arbitrator. *Rent-A-Center*, 561 U.S. at 68-70.

Plaintiffs next try to ground their magic-words requirement in *Martin*. But *Martin* held that a clause delegating *only* "determinations as to the scope, enforceability and effect of this arbitration agreement" did not clearly delegate the

7

question of conduct-based waiver to the arbitrator. 829 F.3d at 1124 (quoting agreement). That was because none of those three enumerated categories included conduct-based waiver—just as the reference to "enforceability" in the reservation here does not encompass conduct-based waiver either. Nothing in *Martin* supports Plaintiffs' invented requirement for waiver-specific language.

The only case Plaintiffs cite in which this Court deemed conduct-based waiver to be reserved for the court is an unpublished decision that did not involve an "all issues" delegation like the one here—much less an express carveout that underscores the clarity of the delegation. *See Morgan Stanley & Co. v. Couch*, 659 F. App'x 402, 404 (9th Cir. 2016). In *Morgan Stanley*, the parties delegated "any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision." *Id.* (citation omitted). The Court held that, because the language was limited to "the arbitrability of individual *issues* or *claims*," it did "not encompass disputes over whether the clause remains valid in light of the parties' litigation conduct." *Id.* at 404-05. In other words, the delegation was insufficient not because it was too "broad," AB25, but because the reference to "a particular issue or claim" *narrowed* its breadth, AB26 (citation omitted). Here, by contrast, the agreement delegates "all issues" to the arbitrator, and the carveout underscores that only the three enumerated categories, none of which applies here, are reserved for the court.

Plaintiffs' out-of-circuit cases, AB26-28, are similarly inapposite. These cases reaffirm that there is no simplistic magic-words requirement or "settled standard" that "'broad' delegations are insufficient," AB25 (citation omitted)—a rule that would make no sense as a matter of basic textual interpretation. *Cf. Lac du Flambeau*, 599 U.S. at 388-89 ("strikingly broad" statutory provision satisfied clear-statement rule). Instead, the courts interpreted the specific clauses at issue, none of which included analogous text delegating "all issues" to the arbitrator or expressly carving out specific issues for the court.

In *Marie v. Allied Home Mortgage Corp.*, for example, the provision delegated "any and all disputes, claims (whether in tort, contract, statutory, or otherwise), and disagreements concerning the interpretation or application of this Agreement . . . including the arbitrability of any such controversy or claim." 402 F.3d 1, 14-15 (1st Cir. 2005). The First Circuit concluded that the provision did not delegate conduct-based waiver. But its decision did not turn on the phrase "any and all," as Plaintiffs argue. AB27 (citation omitted). Instead, the court reasoned that, in the "context of the agreement" at issue, the term "arbitrability" was "surrounded by references to which types of claims should be arbitrated and which should not be"—and thus referred to issues of scope. 402 F.3d at 15. Just as in *Morgan Stanley*, the analysis turned on the text and context of the provision, not any rule against broad delegations.

9

So too for *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007). There, the delegation clause listed types of substantive claims—like employment discrimination and defamation—and referred to "the issue of arbitrability of any claim or dispute." *Id.* at 222 (emphasis omitted) (citation omitted). The court concluded that the structure of the provision indicated an intent for the arbitrator to determine "whether the underlying substantive dispute" was arbitrable but not to decide "procedural questions," like waiver. *Id.* at 221-22. And in *Chrysler*, the court concluded that delegation of disputes over the "sales contracts' 'validity,' 'enforceability,' 'scope,' and 'arbitrability,'" did not suffice to delegate waiver, because neither "enforceability" nor "scope" includes waiver and the reference to "arbitrability" in the clause was insufficiently clear. 143 F.4th at 723.[1]

Plaintiffs' cases thus underscore the need to interpret the contractual text—and the uniquely all-encompassing language of the delegation clause here. Without support for their magic-words requirement, Plaintiffs have no explanation for why

---

[1] Plaintiffs' other cases are also unilluminating. In *Vine v. PLS Financial Services, Inc.*, the court concluded that language delegating "any claim or attempt to set aside this Arbitration Provision" did not include conduct-based waiver. 689 F. App'x 800, 803-04 (5th Cir. 2017) (citation omitted). In *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 999 F.3d 257, 264 (5th Cir. 2021), and *Plaintiffs' Shareholders Corp. v. Southern Farm Bureau Life Insurance Co.*, 486 F. App'x 786, 789 (11th Cir. 2012), the contracts at issue did not include any contract-specific delegation of threshold arbitrability issues, let alone one similar to the unique language here.

10

the delegation of "all issues" should be read to exclude waiver.

3. The parties' incorporation of the AAA rules reinforces that waiver was delegated to the arbitrator. Plaintiffs assert that because the arbitration agreement has an express delegation clause, that incorporation is irrelevant. AB32. But the parties provided that the AAA rules "govern[]" the agreement, except "as modified by these Commercial Terms." 2-ER-82 (§ 5.c.ii). Thus, the parties' delegation clause overrides the AAA rules only to the extent it is *inconsistent* with the AAA rules, whose incorporation delegates issues of arbitrability to the arbitrator. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases); OB29 (citing AAA Rule 7(a)). Here, the sole inconsistency is the delegation clause's express reservation of "scope," "enforceability," and the class-action prohibition for court determination. 2-ER-82 (§ 5.c.ii). For all other issues, including waiver, the delegation clause and the AAA rules are consistent— and both make unmistakably clear that the arbitrator decides. The district court thus erred in resolving the waiver issue itself.

## II. META DID NOT WAIVE ITS ARBITRATION RIGHTS AGAINST MILLIONS OF UNNAMED CLASS MEMBERS

To justify the district court's sweeping holding that Meta waived its arbitration rights as to millions of unnamed class members, Plaintiffs must show that Meta's acts were "so manifestly consistent with and indicative of an intent to relinquish" those rights "that no other reasonable explanation of [the] conduct is

possible." *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340 (9th Cir. 1976) (citation omitted). Plaintiffs come nowhere close. Meta's conduct reflects its intent to litigate the *named plaintiffs'* claims and resist class certification. And Meta timely signaled its intent to enforce its arbitration rights against those unnamed class members who had agreed to arbitrate if a class were ultimately certified. Meta was not required to say more.

Blinking that reality, Plaintiffs advance an expansive reading of *Hill* under which a party surrenders its arbitration rights as to *unnamed class members* merely by taking any action directed at *named plaintiffs* that implicates an arguably common issue. That would, of course, lead to waiver in basically all situations where, as here, a defendant does not seek to arbitrate against the named plaintiffs, or only some members of a putative class agreed to arbitrate. To avoid such a waiver, Plaintiffs insist, a party must flag its arbitration rights an unspecified number of times, even before the court has jurisdiction over unnamed class members. That kind of repeatedly-announce-it-or-lose-it rule conflates waiver with forfeiture, directly conflicts with *Hill*, and accomplishes nothing.

### A. Waiver Is Not The Only "Reasonable Explanation" For Meta's Litigation Conduct

This Court has imposed a high bar for implied waiver: Where "proof of a waiver rests on one's acts," those acts "'should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other

12

reasonable explanation of [the] conduct is possible.'" *Bechtel*, 534 F.2d at 1340 (citation omitted). Said differently, "implied waiver" requires "'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559-60 (9th Cir. 2016) (citation omitted) (finding no waiver). That principle is both long-established in this Circuit and widely recognized by other courts. *See* OB32-33 & n.9. And because conduct-based waiver is typically limited to the party against whom one is litigating, a defendant does not waive its contractual rights as to unnamed class members—who are not parties to the litigation before a class is certified—unless its actions as to *those* members are "inconsistent with" an intent to arbitrate against *them*. *Hill*, 59 F.4th at 468; *see* OB34.

Plaintiffs try to obscure these bedrock principles, suggesting that *Hill* somehow "rejected" *Bechtel*'s demanding standard. AB41. But the three-judge panel in *Hill* could not disavow circuit precedent. Nor did it try. Instead, it confirmed waiver can be inferred from "*a consistent and intentional practice* of seeking judicial resolution" of unnamed class members' claims that "is inconsistent with" the right to resolve those claims "in an arbitration forum." *Hill*, 59 F.4th at 471 n.16 (emphasis added). *Hill* thus reinforces precedent holding that an implied waiver must be supported by "clear, decisive, and unequivocal acts," *Arizona*, 818

13

F.3d at 559 (citation omitted), that leave "no other reasonable explanation" for the conduct, *Bechtel*, 534 F.2d at 1340 (citation omitted).

Plaintiffs do not demonstrate that the *only* reasonable explanation for Meta's litigation conduct is an intent to waive arbitration rights against unnamed class members. Instead, Meta's actions are reasonably—indeed, best—understood as reflecting Meta's intent to (a) litigate the *named* plaintiffs' claims in court (ideally by securing dismissal); (b) defeat class certification; and (c) if necessary, after certification, litigate the claims of class members who never agreed to arbitrate and seek to arbitrate against those who did. The conduct on which Plaintiffs rely, AB39-41, does not unambiguously reflect a desire to waive Meta's arbitration rights.

**Miscellaneous statements.** Plaintiffs begin by taking out of context statements made early in this litigation, claiming Meta disavowed an intent to arbitrate *any* class member's claims from the start. Plaintiffs are wrong. They cite the parties' joint representation in a December 2018 case management statement that the case was not "suitable for reference to binding arbitration." AB5 (quoting SER-277); *see id.* at 41, 47. But that statement was correct when made: No named plaintiff alleged purchases after the arbitration clause's May 2018 effective date. *See* OB38-39. So the case was *not* facially "suitable for reference to binding arbitration." SER-277. Similarly, Plaintiffs reference Meta's statement in an October 2019 motion hearing about the "only contract" at issue in the case. AB6, 8 (quoting

14

SER-198). But there, the court and parties were discussing which contract governed Plaintiffs' contract-based claims, which had not yet been dismissed with prejudice. *See* SER-197–98. Meta's remark that it understood Plaintiffs to base their breach of contract claims on the Terms of Service (rather than some other contract) is hardly a representation that Meta was relinquishing its arbitral rights as to millions of unnamed putative class members.

**Pleading-stage motions.** Plaintiffs suggest that Meta's pre-class-certification motions to dismiss the *named plaintiffs'* claims and motion for judgment on the pleadings demonstrated its intent to litigate, rather than arbitrate, *unnamed class members'* claims. AB39. But the preclusive effect of the rulings Meta sought would not reach unnamed class members. *See, e.g.*, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n.1 (9th Cir. 2000) ("When a motion is maintained against an uncertified class, only the named plaintiffs are affected by the ruling."). And Meta's motions clearly show that Meta understood them to target only the named plaintiffs' claims. In one motion to dismiss, for example, Meta argued that the named plaintiffs had not alleged the supposedly fraudulent estimates that they personally received, and that "each advertiser (and potential advertiser) could see *different* reach estimates." 2-ER-218–19; *see also* 2-ER-224. Meta's pleading-stage motions were thus consistent with an intent to litigate against the named plaintiffs

15

alone—and with Meta's later argument, in opposing class certification, that each class member's claim turned on different Potential Reach estimates.[2]

**Requested protective order.** Plaintiffs point out that Meta sought a protective order covering sensitive commercial information. AB39-40. That is unremarkable: It would have been equally necessary even in a case filed by individual plaintiffs alone, and not on behalf of a putative class.

**Discovery.** Plaintiffs fault Meta for "building an extensive evidentiary record" that included declarations "from future class members" and "experts who attempted to refute the plaintiffs' class-wide evidence." AB40. But Plaintiffs omit that Meta submitted the declarations *in an effort to defeat class certification*—not to litigate the putative class claims Meta argued the court should not adjudicate at all. *See, e.g.*, 2-ER-166–67; 2-ER-181–86; OB42-43. Plus, the record developed below was "related at least in part" to "non-arbitrable" claims, *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1016 (9th Cir. 2023), because Meta had no choice but to litigate against the named plaintiffs and, if a class were certified, the subset of class members who never agreed to arbitrate. *See* OB42-43. Plaintiffs insist that Meta's discovery

---

[2] Plaintiffs also note (*e.g.*, AB7) that Meta's answer did not assert an arbitration right. But Meta did not intend to arbitrate the named plaintiffs' claims, which were the only claims then before the court. And under *Hill*, Meta had no duty to "provide affirmative notice of [its] arbitration rights at a specific time during the litigation." 59 F.4th at 481.

16

conduct must be viewed as part of a "practice of seeking judicial resolution." AB45

(citation omitted). But the question is *what* Meta was seeking to judicially resolve.

The answer is that Meta was trying to prevent unnamed class members' claims from

ever coming before the court—and, following class certification, was preparing to

litigate the claims of those unnamed class members who had not agreed to arbitrate.

Plaintiffs identify no discovery conduct that was relevant only to the arbitrable class

members.

**Summary judgment and *Daubert* motions.** Plaintiffs repeat the same errors

in emphasizing Meta's summary judgment and *Daubert* motions. Meta filed those

motions before a class was certified. That timing is significant for two reasons. First,

the district court was still considering Meta's class certification opposition—which

both (a) argued that the named plaintiffs could not adequately represent unnamed

class members who had agreed to arbitrate, and (b) expressly signaled Meta's intent

to arbitrate with unnamed class members if a class were ultimately certified. 2-

ER-181; *see infra* at 21-22. It makes little sense to interpret Meta's summary

judgment motion as silently abandoning those arguments. Second, that no class had

been certified meant that Meta's summary judgment motion was necessarily directed

only at the *named plaintiffs'* claims. *Cf. Aguilera*, 223 F.3d at 1013 n.1; *see* OB46.

Although Meta filed a summary judgment reply after class certification, that reply

was necessarily limited to the scope of the opening motion.

17

Indeed, Meta's later request for an opportunity to "update[]" its summary judgment briefs "to address the *class* claims, rather than solely the individual claims addressed in the pre-certification briefing," underscores that Meta had not sought judicial resolution of *unnamed class members'* claims through its original summary judgment motion. 2-ER-103. Nor did that later request indicate that Meta intended to relinquish its arbitration rights against the entire class, because again, many members had never agreed to arbitrate. And at the time of that (rejected) request, Meta had already declared its intent to arbitrate the claims of unnamed class members. *Infra* at 21-22. In doing so, Meta had signaled that the proposed class included those who had purchased ads both before and after the arbitration clause's effective date. *See* 2-ER-181. Meta's conduct in seeking summary judgment was fully consistent with its efforts to litigate the named plaintiffs' claims, and, later, the claims of class members who had never agreed to arbitrate. It does not evince an intent to waive arbitration rights as to the millions of unnamed members who *had* agreed to arbitrate.

**Class-certification appeal.** Plaintiffs harp on Meta's interlocutory appeal of the class certification decision, during which the district court stayed the case *sua sponte*. AB37-38; *see* 3-ER-316 (Dkt. 436). But Meta's appeal only reiterated its view that unnamed class members' claims should not be resolved in this action at all. Meta argued that class treatment was inappropriate because "the claims of

18

differently situated class members"—who "range[d] from sole proprietors and local businesses, to government entities, to multinational corporations and Fortune 500 companies" and were "exposed to different representations"—could "[]not be evaluated through common evidence." Appellant Opening Br. 12, 25, *DZ Reserve v. Meta Platforms, Inc.*, No. 22-15916 (9th Cir. Oct. 31, 2022), ECF No. 10 (capitalization normalized); *see also* Pet. for Writ of Cert. 31, *Meta Platforms, Inc. v. DZ Reserve*, 145 S. Ct. 1051 (2025) (No. 24-384), 2024 WL 4445173 ("plaintiff-by-plaintiff differences" should have "precluded class certification"). Meta's insistence that *nothing* in the case should be resolved on a classwide basis cannot be grounds to find that Meta intended to resolve all unnamed class members' claims in court.

**Class notice and statements about trial readiness.** Plaintiffs point to "various status conferences" in which Meta "confirmed its readiness" for trial, implying that Meta should have "indicat[ed] that it would later seek to compel a significant portion of the class into arbitration." AB40. But, again, Meta *did* have to proceed to trial on the claims of the named plaintiffs and class members who had not agreed to arbitrate. Recognizing as much did not waive Meta's right to arbitrate against *other* members of the unnamed class. As Meta told the district court in seeking to compel arbitration, "this case can and should proceed to trial—without the claims of unnamed class members who expressly agreed to arbitrate." 2-ER-25.

Plaintiffs provide no reason to ignore the existence of the non-arbitrable class members in assessing waiver.

Plaintiffs also fault the class notice for not mentioning Meta's forthcoming motion to compel arbitration. AB40, 48-49. But Meta had not moved to compel arbitration of the unnamed class members' claims at that point (and could not successfully have done so, *Hill*, 59 F.4th at 469). Any reference to a not-yet-filed, not-yet-decided motion could well have been confusing or potentially inaccurate, and it was reasonable for Meta to not include it. Even if parties sometimes elect to address arbitration in class notices, Plaintiffs do not cite any authority imposing a blanket rule that a defendant *must* directly communicate its intent to arbitrate to class members through a class notice—or else be deemed to have intentionally relinquished their arbitral rights against the whole class. Indeed, that is the very kind of forfeiture rule *Hill* rejected. *See* 59 F.4th at 481 (rejecting requirement that defendants must "provide affirmative notice of their arbitration rights at a specific time during the litigation").

\* \* \*

In short, Meta's litigation conduct reflects its attempts to litigate the named plaintiffs' claims, defeat class certification, and, eventually, litigate the claims of class members who never agreed to arbitrate. There is plainly a "reasonable explanation" for Meta's conduct that does not evince an intent to waive arbitral rights

20

en masse. *Bechtel*, 534 F.2d at 1340 (citation omitted). And neither the district court nor Plaintiffs offer any reason *why* Meta would want to intentionally relinquish millions of bargained-for rights, while also not pursuing the collective resolution of those claims in court. Plaintiffs fall far short of showing "clear, decisive, and unequivocal acts," *Arizona*, 818 F.3d at 559 (citation omitted), that "manifestly" demonstrate an "intent" to waive arbitral rights on this extraordinary scale, *Bechtel*, 534 F.2d at 1340 (citation omitted).

### B. Meta Expressly Signaled Its Intent To Arbitrate At The Appropriate Time

Even if Meta had a duty to clarify its supposedly ambiguous litigation conduct, its express reservation at the class-certification stage puts to rest any doubts about its intentions. *Hill* holds that a defendant can avoid waiver by "provid[ing] notice of its intention to seek arbitration" to "correct" any contrary "impression." 59 F.4th at 481. And as Plaintiffs acknowledge, AB46, Meta's class certification opposition emphasized Meta's right to "enforce the [arbitration] provision against absent class members," 2-ER-181 n.13. That unequivocally indicated Meta's intent to assert—rather than waive—its arbitration rights.

Plaintiffs dismiss Meta's clearly signaled intent as a "passing reference," faulting Meta for not stating that it "'would actually seek to enforce'" its rights. AB46 (citation omitted). That is yet another magic-words requirement this Court's precedent does not impose. *E.g.*, *Hill*, 59 F.4th at 471 (reiterating that "[t]here is no

21

concrete test" for waiver (citation omitted)).  There would be no reason for Meta to note that it "ha[d] not waived its right to enforce" the arbitration provision as to unnamed class members, 2-ER-181 n.13, unless Meta planned to enforce its rights at the appropriate juncture.  Likewise, Meta's adequacy and typicality arguments based on unnamed class members' arbitration agreements rested on the premise that Meta would compel those members to arbitrate if a class were certified.  2-ER-181.  The district court understood as much, recognizing that "an adjustment to the class definition might be required on arbitration grounds."  2-ER-116.[3]

Plaintiffs' claim that Meta's statement of intent to arbitrate came too late likewise fails.  *See* AB46.  Plaintiffs identify no authority requiring defendants who choose to litigate against named plaintiffs to signal their intent to arbitrate against unnamed class members (if a class is eventually certified) before class certification.  That is unsurprising:  Arbitration rights as to *other individuals* are not relevant to defeating *named plaintiffs'* claims in court.  Plaintiffs would require defendants to raise arbitration rights against unnamed class members at some inapposite juncture early in the litigation—or lose those rights forever.  That makes no sense.  And it contravenes *Hill*, which explicitly rejected a rule requiring defendants to "provide

---

[3]  Plaintiffs' observation that "a 'reservation of rights is not an assertion of rights'" is inapposite.  AB46 (citation omitted).  All agree that Meta could not have successfully moved to compel arbitration until a class was certified and the opt-out period ended.  *See Hill*, 59 F.4th at 469.

22

affirmative notice of their arbitration rights at a specific time during the litigation." 59 F.4th at 480-81. Class certification is a natural time to signal an intent to arbitrate with unnamed class members, because class certification determines whether the district court will assume jurisdiction over them. *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021); *Hill*, 59 F.4th at 469. No earlier reservation of rights was needed.

Plaintiffs also argue that Meta was required to "correct the impression of waiver," AB48 (quoting *Hill*, 59 F.4th at 481), supposedly created by the district court's remark that a "good argument can be made that Meta has waived arbitration," 2-ER-116. But Meta reasonably understood that statement as referring to the question of arbitration against the *named plaintiffs*, leaving nothing to "correct." Plaintiffs' self-serving contrary interpretation, AB48 n.12, does not change that fact. Acting in accordance with a reasonable understanding that differs from Plaintiffs' is not the sort of "clear, decisive and unequivocal" conduct that supports implied waiver, *Arizona*, 818 F.3d at 559-60 (citation omitted), or for which no "reasonable explanation" besides waiver "is possible," *Bechtel*, 534 F.2d at 1340 (citation omitted). That is particularly true given the district court's recognition—in the same opinion—that the class definition might need to be adjusted later "on arbitration grounds." 2-ER-116. And, regardless, Plaintiffs do not explain how (or when) Meta was supposed to "correct" a misimpression in a judicial opinion. Or why failure to

23

do so somehow amounts to unequivocal evidence of an intent to waive all arbitral rights. Once again, Plaintiffs are inventing affirmative arguments a defendant must make to *avoid* waiver, in violation of *Hill*. 59 F.4th at 481.

### C. Plaintiffs Distort *Hill* And Demand Senseless Requirements

Like the decision below, Plaintiffs misread *Hill* and seek to impose a senseless repeatedly-announce-it-or-lose-it rule. And they do not meaningfully dispute that, as applied here, that novel rule violates the Rules Enabling Act.

1. Plaintiffs read *Hill* to hold that any motion involving "issues common to the class," even if not directed at the class, constitutes litigation against the unnamed class members. AB44. Plaintiffs are wrong.

*Hill* emphasized that defendant Xerox's summary judgment motion was expressly "aimed at obtaining a judicial resolution of the legal merits underlying *all* class members' claims"—"*beyond those* that were personal to" the named plaintiff. 59 F.4th at 462-63 (emphasis added). Indeed, Xerox had urged the court to reject as meritless arguments that "were raised by '[c]lass counsel' and were 'not advanced by Hill' because they did not apply to her claims specifically," *id.* at 463 (alteration in original)—in other words, arguments that applied only to unnamed class members. So *Hill did* "parse" the defendant's summary judgment motion to determine whether it was aimed at the named plaintiff alone or encompassed unnamed class members.

24

*Hill* involved still more evidence of Xerox's intent to litigate otherwise arbitrable claims belonging to unnamed class members. Xerox did not "even attempt[] to reserve its arbitration right under" a 2002 arbitration agreement, despite "expressly and consistently d[oing] so for its arbitration right under" a 2012 agreement. *Id.* at 473. And the 2012 agreement that Xerox did invoke bound *only* unnamed class members, not the named plaintiff. *Id.* at 462-63, 473. Given Xerox's "strategic choice" to seek a "judicial resolution of the 2002 [agreement] signatories' claims on the merits" (not merely the claims of the named plaintiff)—while *invoking* its arbitral rights as to a different subset of the class—this Court found that Xerox had waived its right to arbitrate with unnamed class members who signed the 2002 agreement. *Id.* at 473-77. Plaintiffs completely ignore those critical facts, which look nothing like this case. *See* AB37-38.

In place of *Hill*'s careful, fact-sensitive analysis, Plaintiffs propose an expansive and unforgiving rule. To them, litigating *any* issue against an individual plaintiff that might bear on putative class members' claims necessarily reflects an unequivocal intent to litigate unnamed class members' claims. AB44. That cannot be right. The whole premise of a Rule 23(b)(3) class action is that common issues exist, meaning that a named plaintiff's claims may bear on those of the class. It does not follow that, merely by litigating against named plaintiffs, a defendant

25

automatically waives its rights as to "unnamed putative class members" who are "not yet parties to the case." *Moser*, 8 F.4th at 877; *see* OB34 & n.10 (citing cases).[4]

Indeed, under Plaintiffs' position, it would be nearly impossible *not* to waive arbitration against an entire class if a party elects to defend on the merits against the named plaintiffs. That rule makes no sense, and it would be deeply unfair, because (as here) there may be substantive or strategic reasons why a party may wish to defend against a named plaintiff's claims in litigation without effecting a mass waiver. *See* OB2, 39. Or (also as here), there might be a mixed class where not everyone is covered by an arbitration agreement, and so litigation will be necessary against some portion of a certified class. In these situations, a defendant *must* litigate. Litigation alone cannot be enough to waive arbitral rights against the entire class.

To resolve this dilemma, Plaintiffs argue that a defendant must "give clear, reasonably prompt notice" of its intent to enforce its arbitration rights against unnamed class members early in a putative class action—even long before the

---

[4] None of Plaintiffs' cases holds otherwise. Like *Hill*, *Martin* involved pre-certification motions expressly seeking merits determinations with respect to *unnamed class members*. *See Martin*, 829 F.3d at 1120-21, 1126 n.4. Indeed, *Martin* emphasized how the defendants carefully "structur[ed] the litigation" so that the parties "focus[ed] discovery on the issue whether the class members were [the defendant's] employees under wage laws . . . before any effort to certify the class." *Id.* at 1120-21, 1126 (citation omitted). And *Van Ness Townhouses v. Mar Industries Corp.* was not a class action and thus does not speak to waiver in the class context. *See* 862 F.2d 754, 755 (9th Cir. 1988).

defendant can enforce those rights. As explained, Meta provided the requisite notice at an appropriate time. *See supra* at 21-23. Requiring more would impose exactly the type of "use it or lose it," *Hill*, 59 F.4th at 481—or more precisely, "announce *before* you can use it, or lose it"—forfeiture rule that *Hill* rejected. *See* OB50-51. As Plaintiffs recognize, AB50, *Hill* refused to require defendants to "provide affirmative notice of their arbitration rights at a specific time during the litigation." 59 F.4th at 480-81. Rightly so, as requiring defendants to repeatedly announce their arbitration rights through footnotes and "placeholder" motions to compel would not materially change the course of the litigation. *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1239 (11th Cir. 2018); *see* OB53. Here, Meta would have simply announced its intent to arbitrate as to unnamed class members (again), while still litigating as to the named plaintiffs in court—and the litigation would have proceeded exactly as it did. Plaintiffs' accusations, AB2, 52, of "gamesmanship" and "cynical gambit[s]" are just rhetoric. But the costs of their rule are real: Merely by litigating against named plaintiffs or a subset of the class, defendants would run the risk of losing their contractual rights as to millions of counterparties.

2. Plaintiffs do not directly respond to Meta's Rules Enabling Act challenge. The decision below held that Meta prospectively waived its arbitration rights against *all* unnamed class members based on the entire body of "filings entered on the ECF docket" and "substantive events" (such as discovery disputes and

27

motions to dismiss) that occurred *before* many of those unnamed class members agreed to arbitrate, 1-ER-6—and thus *before* Meta had an "existing right" to compel arbitration against them, *Hill*, 59 F.4th at 468. In doing so, the decision below impermissibly gave Meta more limited "rights in a class proceeding than [it] could have asserted in an individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016).

Plaintiffs do not even try to explain how the district court could permissibly undertake that kind of blanket analysis, when much of the relevant conduct occurred before some class members even agreed to arbitrate. Instead, they jump straight to harmless error, contending that Meta's conduct following the close of the class period in October 2021 is "enough" to support a finding of waiver as to all unnamed class members. AB51-52. But the district court's analysis encompassed conduct "since 2018." 1-ER-7. And the post-October 2021 conduct Plaintiffs point to— Meta's summary judgment motion, *Daubert* motions, confirmations of trial readiness, failure to repeat its intent to arbitrate with unnamed class members, and lack of insistence that the class notice mention arbitration, *see* AB51—was entirely consistent with Meta's intent to litigate the claims of the named plaintiffs and unnamed class members who never agreed to arbitrate. *See supra* at 17-20; OB46-48.

Out of luck on the merits, Plaintiffs resort to suggesting in a footnote that Meta waived its Rules Enabling Act argument. *See* AB51 n.13. But Meta raised the issue

28

below, pointing out that it "cannot have had 'knowledge' of a right to arbitrate against ad buyers who had not yet signed an arbitration agreement." 2-ER-27. Meta's Rules Enabling Act argument directly responds to the district court's failure to distinguish between class members in analyzing whether Meta's conduct evinced an intent to waive its rights, and is thus properly presented here. And in any event, "it is claims that are deemed waived or forfeited, not arguments." *United States v. Williams*, 846 F.3d 303, 311 (9th Cir. 2016) (citation omitted).

\* \* \*

In the end, the most telling thing about Plaintiffs' position is that they cannot point to any *act* that Meta should have taken (or not taken) to avoid a mass waiver. Plaintiffs never argue that Meta's motion to compel came too late. Nor do they claim that Meta should have refrained from engaging in the litigation conduct it did. Indeed, Meta *had* to engage in that conduct in order to litigate against the named plaintiffs. Plaintiffs' only real argument is that Meta should have *said* more "clear[ly]" and "prompt[ly]" that it was preserving its rights. AB50 (citation omitted). But that is a version of the forfeiture rule that *Hill* rejected—only more extreme and with no guideposts. 59 F.4th at 472 n.18, 481. Meta expressly reserved its rights at the class-certification stage, and it was not required to keep doing so. And when Meta's actual conduct is assessed, it falls far short of "so manifestly" indicating "an intent to relinquish" its arbitration rights as to unnamed class members

29

"that no other reasonable explanation . . . is possible." *Bechtel*, 534 F.2d at 1340

(citation omitted).

## CONCLUSION

The district court's order should be reversed.

Dated:   April 17, 2026                                    Respectfully submitted,

                                                           *s/ Andrew B. Clubok*

Melanie M. Blunschi                        Andrew B. Clubok
Francis J. Acott                           Susan E. Engel
Nicholas Rosellini                         Margaret A. Upshaw
LATHAM & WATKINS LLP                       Brittany M.J. Record
505 Montgomery Street, Suite 2000          LATHAM & WATKINS LLP
San Francisco, CA  94111                   555 Eleventh Street, NW, Suite 1000
                                           Washington, DC  20004
Samir Deger-Sen                            (202) 637-2200
Nikita Kansra                              andrew.clubok@lw.com
Kristin C. Holladay
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020

*Counsel for Appellant Meta Platforms, Inc.*

30

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8.  Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)**  <u>25-7657</u>

I am an attorney for Appellant Meta Platforms, Inc.

This brief contains 6,975 words, excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>*s/ Andrew B. Clubok*</u>          **Date:** <u>April 17, 2026</u>